[Department One. — June 23, 1883.]

## NICHOLA FERREA, RESPONDENT, *v.* ANTHONY CHABOT ET AL., APPELLANTS.

JUDGMENT — EVIDENCE — DAMAGES. — In an action to recover damages for the breach of an agreement to supply water to irrigate a tract of land owned by the plaintiff, which, together with an adjoining tract purchased by him after the making of the agreement, was demi-ed to a third person under a lease containing a covenant on the part of the plaintiff to supply the same quantity of water *to run all the year round* for the irrigation of *both tracts,* a judgment for damages in favor of the tenant against the plaintiff for a breach of the covenant caused by the breach of the agreement, is not admissible in evidence to prove the damages resulting from the breach of the latter, the covenant being different from the agreement as to the quantity of land to be irrigated, and the time during which the water should be supplied. A judgment can only be used as evidence in relation to matters directly determined by it. The provisions of our *Code as to the effect of judgments are merely declaratory of the common-law* rule on the subject.

PENDENCY OF ACTION — NOTICE. — Verbal notice of an action, the judgment in which may bind the person notified, though not a party to the record, *held* to be sufficient.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to abate a nuisance as well as for the damages resulting from the breach of the agreement in question, but the judgment rendered was for damages only. The defendant Chabot, who made the agreement with the plaintiff, and acquired thereby certain rights and privileges in consideration of his promise to supply water, subsequently assigned the agreement to his co-defendant, " The Vallejo City Water Company." The evidence shows that both defendants had verbal notice of the action between the plaintiff and his tenant in time to defend the same.

The case was ably argued by the counsel for the respective parties, but the opinion of the court is so full and complete upon the points decided, it is unnecessary to give the arguments of counsel or the authorities cited by them.

*Garber, Thornton & Bishop,* and *Rhodes & Barstow,* for Appellants.

*B. S. Brooks,* for Respondent.

McKEE, J.—On the 3d of February, 1870, the plaintiff and defendant entered into the following contract:—

"Whereas, Anthony Chabot is about to construct a reservoir on the Sulphur Spring Creek, about three miles northerly from Vallejo, in Sonoma County, California, and lay down pipes to lead the waters into the city of Vallejo; and, whereas Nicola Ferrea owns a certain piece of land on the said Sulphur Spring Creek, at a point below where said reservoir is about to be constructed by the said Anthony Chabot. Now, therefore, this indenture witnesseth that the said Ferrea, as party of the first part, in consideration of the payment to him of three hundred dollars, and of the performance, by the said Anthony Chabot, the party of the second part, of the conditions and covenants hereinafter named, has agreed to, and doth hereby, give, grant, sell, and convey unto the said party of the second part, his heirs and assigns forever, the right of way to lay pipes from the reservoir aforesaid, of the said party of the second part, in a westerly direction through the northern portion of the land of said party of the first part, as now designated by a stake; and also allow the said party of the second part the privilege of building a dam on the Sulphur Spring Creek, and within the premises of the said party of the second part, and construct a reservoir therein, and gather and preserve all the water coming down said creek, and its tributaries and all other sources, subject, however, to the following agreements and conditions, to be kept and performed by the said party of the second part, and which form part of the consideration herein, to wit:—

"First. In laying down his pipes, the said party of the second part agrees to keep them free from obstructing the cultivation of the soil of said party of the first part.

"Second. The said party of the second part agrees to supply the said party of the first part water for irrigation of his premises, said water to be delivered on the premises of said party of the first part, through a four-inch pipe, and as high on the said premises as it will naturally flow; and also to supply the said party of the first part with the necessary water for family use in his dwelling-house, through a service pipe from the main pipe; and also to supply said party of the first part with the necessary water for stock and family use on the premises now

owned by him, and formerly known as the Riordan Ranch, the cost of pipes and the laying of them to be at the cost of said party of the second part."

The "piece of land" owned by Ferrea, on the creek at a point below where the reservoir was about to be constructed, consisted of a tract of land, containing twenty-five acres, which was known as the "Italian Garden." There Ferrea resided, and, at the time of the agreement, the garden constituted the "premises" on which Chabot covenanted to supply Ferrea with water, for family use in his dwelling-house, and for the irrigation of said premises. The agreement was recorded, and thereafter Chabot constructed his reservoir, laid his pipes, and had the work completed and in operation by October 1, 1871.

Adjoining these premises of Ferrea lay a tract of twenty-four acres of land, which Ferrea was not the owner of at the date of the agreement; but after the execution of the agreement — some time in August, 1870 — he purchased that twenty-four-acre tract and added it to the garden tract; and being the owner and in possession of both tracts, containing forty-nine acres, he demised them, on the 17th of October, 1870, to Benedetti Passalaqua, for the term of six years from November, 1870, for a rent reserved of one hundred and twenty-five dollars per month; and, by the lease, covenanted to supply the lessee with water, to run the year round, through a four-inch pipe for the irrigation of said forty-nine acres; that in case of a failure of the water to run during any portion of said time he would be responsible for all damages occasioned thereby. Passalaqua entered into possession under the lease, and has since kept and maintained possession; but he refused to pay the rent reserved by the lease, because of a failure to supply the water necessary for the irrigation of the leased premises; and for the damages sustained by him by reason of that failure he brought suit on the 21st of June, 1871, against Ferrea, in which he recovered judgment on the 8th of February, 1875, against Ferrea for seven thousand dollars and costs; and in a subsequent suit in equity between the same parties the damages recovered in that action at law were, by decree of the court in equity, set off against the rent reserved in the lease.

That judgment for seven thousand dollars and costs was

offered and admitted in evidence on the trial of this case, over the objections of the defendants; and it appears to have been the only evidence of the damages alleged to have been sustained by the plaintiff by reason of the breach of the covenants contained in the agreement of the 3d of February, 1870.

The admission of the judgment in evidence against the defendants is one of the assignments of error.

By the Code a judicial record is made conclusive or *prima facie* as evidence between parties and privies. Section 1908 declares "that every domestic judgment, and final order is, in respect to the matter directly adjudged, conclusive between the parties, and their successors in interest by title subsequent to the commencement of the action or proceeding, litigating for the same thing, under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding." And section 1909 declares that all other judicial orders of a court or judge of this State are, in respect to the matter directly determined, *prima facie* between the same parties and privies. Sections 1910 and 1912 declare that "the parties are deemed to be the same when those between whom the evidence is offered were on opposite sides in the former case, and a judgment or other determination could in that case have been made between them alone, though other parties were joined with both or either"; and "whenever, pursuant to the preceding sections, a party is bound by a record, and such party stands in the relation of a surety for another, the latter is also bound from the time that he has notice of the action or proceeding and an opportunity, at the surety's request, to join in the defense." But it is also declared (§ 1911) that "that only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein, or necessary thereto." Whether, therefore, the record admitted in evidence was conclusive, or *prima facie* only, it was, if admissible at all against the defendants, confined to that which appears upon its face to have been so adjudged, or which was actually and necessarily included therein, or necessary thereto. These sections of the Code are merely declaratory of the common-law rule, that the judgment of a court of competent jurisdiction,

directly upon the point, is, as a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter directly in question in another court.

Nominally the parties to the two suits were not the same, but it is claimed that in law they were the same, because the parties in this suit, as to the supply of water, which was the subject-matter involved in both suits, stood toward each other in such a relation that it was the duty of the defendants, when Passalaqua sued Ferrea for a breach of his covenant, to have defended the suit, upon receiving notice thereof and having an opportunity to make a defense; and having had notice they were bound by the judgment.

In fact, as found by the court, "the defendants had notice of the suits brought by Passalaqua, and took upon themselves the management, charge, and control of the defense of said suits." But it is contended that the finding is based on evidence of a verbal notice, and that the notice necessary to bind a person by a judgment to which he was not made a party must be in writing. But in *Miner* v. *Clark*, 15 Wend. 125, the court say: "The object of the notice is to inform the grantor that a suit has been brought against the grantee. The grantor is supposed to be better able to defend such a suit, and by his covenant he undertakes to warrant and defend the grantee against the claim of all persons. A parol notice gives information to the grantor quite as well as a written one, and as there is no technical rule requiring such a notice to be in writing, no writing is necessary; and if we regard the reason and propriety of the case, we come to the conclusion that the grantor must defend or not at his peril after notice." That case was referred to in *Peabody* v. *Phelps*, 9 Cal. 226. It is true, in that case there was no notice, written or verbal. But in *Sampson* v. *Ohleyer*, 22 Cal. 204, and *Wheelock* v. *Warschauer*, 34 Cal. 265, verbal notice, by a tenant to his landlord, of a suit brought for recovery of the land, was held sufficient to bind the latter by any recovery in the suit.

Assuming, then, that such a relation existed between the parties to this suit as bound them by the judgment in that, and that the defendants were concluded from questioning the matter determined therein, the question remains, did the matter determined include the damages sustained by the plaintiff herein by

reason of the breach of the covenants for which he has sued the defendants? We think it did not. That judgment was founded on a different contract from the one which was in controversy in this case. In this, the covenant was to supply Ferrea with water, through a service pipe from the main pipe, for family use, and through a four-inch pipe raised as high on the premises known as the "Italian Garden," as the water would naturally flow, for the irrigation of those premises. The covenant was intended for the use and enjoyment of those premises in the manner and for the purpose intended by the parties at the time of the execution of the agreement; it extended only to those premises, and did not include or operate upon the twenty-four acres of land of which Ferrea was not the owner. But the subsequent demise to Passalaqua was of the "Italian Garden," and "the twenty-four acres adjoining and confining with the said garden . . . . making in all forty-nine acres of land, with four inches of running water for all year round until the expiration of the lease"; and if the water should fail to run during said period of time or any portion thereof, Ferrea bound himself to be responsible and liable for all damages sustained. And the breach assigned in the Passalaqua suit was that Ferrea had broken his covenant in failing to supply Passalaqua with the stream of water for the purpose of irrigation upon said demised lands during the term for which said lands were demised; and the recovery was for loss sustained on the forty-nine acres.

Assuming, therefore, that the supply of water was the same in both suits, yet the covenants were not the same, and the causes of action were different. In this, the cause of action was to recover damages sustained by reason of the failure to supply water for irrigating twenty-five acres of land. In that, the cause of action was to recover for the loss sustained by reason of the failure to supply the same quantity of water for the irrigation of forty-nine acres; and the recovery was of the damages assessed on that basis. But that did not include, as a distinct fact, the damages sustained on twenty-five acres. The question of the damages done to the "premises" of Ferrea at the date of the covenant to him by Chabot, was not raised, tried, or determined in that action. It was raised, for the first time, in this case. It was, therefore, only an incidental or collateral fact to

the Passalaqua case; it was not a fact found or necessary to be found in that case. But the rule is well settled that a judgment is not evidence of any matter incidentally cognizable in the action in which it was rendered, or collateral to it, or inferable from it by argument, or which rests in evidence. When a judgment in one action, says the Supreme Court of the United States, is offered in evidence in a subsequent action between the same parties upon a different demand, it operates as an estoppel only upon the matter actually at issue and determined in the original action. (*Davis* v. *Brown*, 94 U. S. 423.) And in *Russell* v. *Place*, 94 U. S. 606, it is said: A judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties; but to this operation of the judgment it must appear, either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record the whole subject-matter of the action will be at large and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To the same effect are *Cromwell* v. *County of Sac*, 94 U. S. 351; *Garwood* v. *Garwood*, 29 Cal. 515; *Fulton* v. *Hanlow*, 20 Cal. 450; *Nims* v. *Vaughn*, 40 Mich. 356; *Jacobson* v. *Miller*, 41 Mich. 90.

The judgment roll in *Passalaqua* v. *Ferrea* was, therefore, inadmissible as evidence to prove the averment of damage; and as there is no evidence in support of the finding that the plaintiff sustained $10,000 damages, by reason of the breach of the covenants of the defendant Chabot, the judgment must be reversed.

Judgment and order reversed, and cause remanded for a new trial.

Ross, J., and McKinstry, J., concurred.

Hearing in Bank denied.