[Civ. No. 3854. Second Appellate District, Division Two.—October 24, 1922.]

## C. W. BATEMAN, Appellant, v. FRED R. KELLOGG et al., Respondents.

[1] NEW TRIAL—SECOND JUDGMENT—APPEAL.—An order granting a new trial is not reviewable on appeal from the judgment entered on the retrial of the case.

[2] EXECUTIONS—SALE OF REAL PROPERTY—TITLE OF PURCHASER.— When the real property of a judgment debtor is sold on execution to satisfy a judgment lien, the purchaser at such sale acquires the legal title to such property, subject to prior mortgage and judg-

ment liens and to the right of the judgment debtor to effect a re-·
demption at any time within twelve months, and subject also to
the right of the judgment debtor to remain in possession until
such time as the sheriff's deed should be executed.

[3] ID.—EXTINGUISHMENT OF LIEN—RIGHT OF PURCHASER TO REDEEM.
When the real property of a judgment debtor is sold on execu-
tion to the judgment creditor for the full amount of the judg-
ment, the lien of such judgment debtor is thereby extinguished,
and, therefore, he is not entitled to redeem as a "redemptioner"
from a subsequent sale to satisfy a prior mortgage lien, but, as
the holder of the legal title to the property, he is entitled to re-
deem from such foreclosure sale as the "successor in interest" of
the judgment debtor.

[4] ID.—SUCCESSIVE SALES — TITLE TO PREMISES — RIGHT OF REDEMP-
TION.—When real property of a judgment debtor is sold on execu-
tion to the judgment creditor to satisfy a judgment lien, such
judgment creditor acquires the legal title of the judgment debtor
as of the date of his judgment lien, and he is not divested of that
title by a sale of the property under a deed of trust executed by
the judgment debtor subsequent to the date of said judgment lien;
but the purchaser of the property at the sale under said subse-
quent deed of trust—as the successor in interest of the judg-
ment debtor—acquires the right of said judgment debtor to
redeem the property from the sales made to satisfy the prior
liens.

[5] ID.—EFFECT OF MORTGAGE FORECLOSURE—TITLE OF PURCHASER.—
The effect of a mortgage foreclosure is of itself to extinguish the
right and claim of all the defendants in the foreclosure action ac-
quired subsequent to the date of the mortgage, and to vest in the
purchaser the title of the mortgagor at the date of the mortgage,
discharged of all such right and claim.

[6] ID.—REDEMPTION BY SUCCESSOR IN INTEREST.—A redemption by
the "successor in interest" of a judgment debtor terminates the
sale and vests the title in such successor in interest.

[7] ID.—RIGHT TO REDEEM—ACCEPTANCE OF MONEY.—If the person
from whom a redemption is made consents and accepts payment
of the redemption money, it is as to him a valid redemption, even
though the person making it be not qualified to redeem.

[8] ID.—REDEMPTION BY LIENORS.—If lienors, whether by judgment
or mortgage, redeem from an execution sale, the course of the
sale is not thereby impeded or precluded, but finally culminates
in a deed to the redemptioner, who will succeed to all the rights
which the purchaser at the execution sale would have possessed
had no redemption been made.

[9] ID. — JUDGMENT DEBTOR — SUCCESSOR IN INTEREST. — While the
words "successor in interest" are mentioned in section 701 of the

Code of Civil Procedure only, and the succeeding sections refer exclusively to the judgment debtor and to redemptioners, when in these succeeding sections the code uses the term "judgment debtor," as contradistinguished from "redemptioners," that term must be construed broadly enough to include "successors in interest" of the judgment debtor.

[10] ID.—TRUST DEED—ABSENCE OF LIEN.—The result of the enforcement of a trust deed may be, for all practical purposes, the same as the enforcement of a mortgage with power of sale, but a trust deed is not a mortgage and does not create a lien.

[11] ID.—MORTGAGE FORECLOSURE—SUBSEQUENT SALE UNDER LATER DEED OF TRUST—REDEMPTION BY PURCHASER.—The purchaser at a trustee's sale under a deed of trust is not a "redemptioner," as that word is used in subdivision 2 of section 701 of the Code of Civil Procedure and in the subsequent sections, but he becomes the "successor in interest" of the judgment debtors or mortgagors —so far as there remains in the latter any interest subsequent to the sheriff's sale under a prior judgment—and his redemption from a foreclosure sale under a mortgage antedating such prior judgment extinguishes the latter sale and restores the title to the mortgagor or his successor in interest.

[12] ID.—REDEMPTION BY JUDGMENT DEBTOR—PRIOR LOSS OF TITLE.— A mortgagor, as one of the judgment debtors named in a mortgage foreclosure decree, has a right to redeem from the foreclosure sale, even though a judgment creditor has succeeded to all his title to the premises; and if he exercises that right, not only will the effect of that sale be terminated, but the title will revest immediately in the judgment creditor who succeeded to his title to the premises. The same result would follow a redemption by a successor in interest of the right of redemption of said mortgagor.

[13] ID.—REDEMPTION BY SUCCESSOR IN INTEREST OF MORTGAGOR— QUIETING TITLE—EQUITY.—Where the successor in interest of the right of redemption of a mortgagor redeems from a prior mortgage foreclosure sale, thereby revesting the title to the premises in a judgment creditor who had succeeded to such mortgagor's title to the premises, the latter, in order to quiet his title to the premises, will be required to do equity by paying to said successor in interest of the mortgagor the amount paid to effect such redemption with interest.

[14] JUDGMENTS—ERRONEOUS DESIGNATION OF INTEREST—RES ADJUDICATA.—The fact that the decree in a mortgage foreclosure action erroneously designates the interest of one of the parties defendant as a "lien" existing "by reason of a sheriff's certificate of sale" will not conclude him, in a subsequent action to quiet title after the foreclosure sale had been terminated by a redemption, from proving that by his purchase at the sheriff's sale he succeeded to the title of the mortgagor.

[15] ID. — INCIDENTAL QUESTIONS — RES ADJUDICATA. — A question which is only incidentally involved and which is not actually litigated, that is, made the subject of trial and pressed upon the consideration of the court, is not concluded by the judgment so as to be *res adjudicata* in a subsequent suit on a different cause of action.

[16] EXECUTIONS—CERTIFICATE OF SALE—SUFFICIENCY OF DESCRIPTION. The omission of two calls from the description of property in a sheriff's certificate of sale and in the notices of that sale does not constitute a fatal defect where, notwithstanding such omission, the remaining calls as given in the certificate of sale and in the notices are sufficient to describe the property and to identify it as the land in controversy. A description that is sufficient for a voluntary conveyance is sufficient for an involuntary conveyance.

[17] ID.—SHERIFF'S DEED—ERRONEOUS DATE.—A sheriff's deed to the purchaser at an execution sale gives no new title, but is simply evidence that the title acquired at the sheriff's sale has become absolute; and an error in the date of such deed is not fatal to such claim of title.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

Turner & Grainger for Appellant.

Robert M. Clarke and Henry L. Knoop for Respondents.

FINLAYSON, P. J.—This is an appeal by plaintiff from a judgment in favor of defendants in an action to quiet title to a parcel of land in Los Angeles County.

There were two trials of the case. Upon the first, which was without a jury, findings on all the material issues were made in favor of plaintiff, and the court gave judgment for plaintiff accordingly. Thereafter an order was made granting defendants' motion for a new trial. The order, which was general in its terms, reopened the case for a new trial on all the issues. A retrial was had, at the conclusion of which the court rendered and entered its judgment in favor of defendants. It is from that judgment that plaintiff now appeals. [1] One of the points urged by plaintiff upon this appeal is that the trial court erred in making its order granting defendants' motion for a new trial after the first judgment in the case, and that, therefore, that order

should be set aside and the first judgment reinstated and affirmed. That, however, is not a question which may be considered on this appeal. For the reasons set forth in *Furlow Pressed Brick Co.* v. *Balboa L. & W. Co.*, 186 Cal. 754 [200 Pac. 625], the order granting a new trial after the first judgment, thereby vacating that judgment, is not reviewable on this appeal from the second judgment. (See, also, *Schomaker* v. *Roemer*, 54 Cal. App. 258 [201 Pac. 803].)

On the second trial the court found that plaintiff is not the owner of or entitled to the possession of the real property in controversy, and that it is not true that defendants, who are in possession, are without right or title to the land. The alleged insufficiency of the evidence to support these findings is the sole contention made by appellant with respect to the result of that trial.

The facts shown on the second trial, in so far as they are necessary to an understanding of the questions presented by this appeal, are substantially as follows: Both sides claim through L. A. Walker and Mary J. Walker, husband and wife, as the common source of title. It was stipulated that the Walkers owned the property on June 5, 1912. On that date they executed a mortgage to Walter P. Temple. This mortgage, by two assignments, was finally held by John L. Boals. On March 8, 1915, Boals commenced a foreclosure action, and on the same day caused a notice of *lis pendens* to be filed in the office of the county recorder.

On June 6, 1912, the Walkers executed to Catherine Seccombe, as trustee, a deed of trust covering the same property. On April 11, 1914, a sale was had under this deed of trust, and on September 14, 1914, the purchaser at that sale reconveyed the property to L. A. Walker. On the day that this reconveyance was made to Walker, appellant, as will hereafter appear, acquired a judgment lien on the property. By the reconveyance to L. A. Walker the whole title was vested in him, subject only to the mortgage which he and his wife had given to Temple, and subject also to appellant's judgment lien and to a judgment lien in favor of The Grange Company—the next mentioned encumbrance. In other words, Mary J. Walker ceased to have any interest in the land after its sale under the Seccombe deed of trust and the reconveyance to her husband.

Following the Temple mortgage, in point of time, was the lien of a judgment of a justice's court in favor of The Grange Company against L. A. Walker. That judgment became a lien on the property on February 21, 1914, on which day an abstract of the judgment was recorded in the office of the county recorder. Subsequently this judgment was assigned to F. G. Stickney.

Next in point of time was the lien of C. W. Bateman, the plaintiff and appellant in the present action. His was the lien of a judgment for $103.75 which, on September 3, 1914, was rendered by the justice's court of Los Nietos township in favor of Bateman and against L. A. Walker, and an abstract thereof was recorded September 14, 1914, in the office of the county recorder. On the day when this judgment became a lien on the property, the legal title, as has been shown, was in L. A. Walker, subject only to the Temple mortgage and The Grange Company's judgment lien. Execution was issued on appellant's judgment against Walker, and on March 9, 1915, which was the day following the commencement of the action by Boals to foreclose the Temple mortgage, appellant caused the writ of execution to be levied by the sheriff of Los Angeles County on the property in controversy. On May 3, 1915, the property was sold to appellant at sheriff's sale for $135.35, and a sheriff's certificate of sale was issued to him. It is under this execution sale that appellant claims title to the land. On May 4, 1916, appellant received a sheriff's deed to the property.

Next in point of time succeeding the accrual of appellant's judgment lien was a trust deed to L. O. Hatch, as trustee. That instrument, executed by the Walkers on October 16, 1914, was given to secure an indebtedness of L. A. Walker to George H. Woodruff, named as the beneficiary in the trust deed. On August 18, 1915, the trustee in this deed of trust caused the premises to be sold to Woodruff to satisfy L. A. Walker's obligation to him. It is under this deed of trust and the trustee's sale thereunder to Woodruff, and the latter's redemption from the sale which was had under the decree foreclosing the Temple mortgage, that respondents make their claim of title.

As will be noticed, when Boals commenced his action on March 8, 1915, to foreclose the Temple mortgage, Bateman, the appellant here, had not caused execution to be issued on

his judgment against Walker, nor had the sale to Woodruff been made by Hatch under the deed of trust which the Walkers had executed to secure L. A. Walker's indebtedness to Woodruff. Among the defendants in the action by Boals to foreclose the Temple mortgage were the mortgagors, Mr. and Mrs. Walker, Bateman (the plaintiff and appellant here), Woodruff (under whom respondents claim title), L. O. Hatch (the trustee in the trust deed given for the benefit of Woodruff), and The Grange Company—the assignment of its judgment to Stickney not having been made when the foreclosure action was commenced. Later Stickney appeared as a defendant, substituted for one of the fictitious defendants.

Bateman filed an answer in the mortgage foreclosure action. He alleged in his answer in that action that, by recording the abstract of the judgment which he had obtained in the justice's court against L. A. Walker, he acquired a lien on the land, and that on May 3, 1915, he purchased the premises at sheriff's sale under the writ of execution issued on his judgment against Walker. He prayed that the court, in its decree foreclosing the mortgage, fix the manner of the distribution of the proceeds from the foreclosure sale, and that such proceeds, after their application to the expenses of the sale, be applied to the payment of the prior liens against the property, and that he receive from the residue, if any should remain, the amount necessary to redeem the property from the sale which the sheriff had made to him on May 3, 1915.

In its decree foreclosing the Temple mortgage, the court, after declaring that the Walkers owed Boals $3,387.01, secured by the mortgage, and that Bateman had a lien for $144.40 subject to the Temple mortgage and to the judgment lien held by Stickney, decreed that the property be sold, and that after paying all the costs incidental to the sale the proceeds be applied (1) to the satisfaction of the Temple mortgage, (2) to the satisfaction of the Stickney lien, if there should be any surplus available therefor, and (3) if there still remained a surplus, that it be paid to Bateman to the amount of his justice's judgment and costs.

On February 1, 1916, the property was sold by the sheriff to Stickney under the decree foreclosing the Temple mortgage. Stickney paid a sum sufficient to satisfy the judg-

ment of The Grange Company against L. A. Walker, as well
as the amount decreed to be due to Boals under the mort-
gage.

On February 1, 1917, Woodruff, who, it will be recalled,
had purchased the property at the trustee's sale which was
had under the Walkers' deed of trust to L. O. Hatch, re-
deemed the property from Stickney by paying to the sheriff
the sum of $4,212.35, that sum being in full payment of the
purchase price which had been paid by Stickney as the
purchaser at the foreclosure sale on February 1, 1916, to-
gether with interest at the rate of one per cent per month
to the time of redemption.

No one redeemed from Woodruff, and the sheriff, on April
6, 1917, executed a deed to him. Thereafter Woodruff con-
veyed the property to one Birch, who later conveyed it to
the defendants Kellogg, McCray, and McBurney. The de-
fendant Montgomery is a lessee of his codefendants.

Appellant's argument may be summarized substantially as
follows: The lien of appellant's judgment against L. A.
Walker antedated the trust deed which had been given by
the Walkers to Hatch to secure L. A. Walker's indebtedness
to Woodruff. Mrs. Walker had ceased to have any interest
in the land after April 11, 1914, on which day it was sold
under the trust deed which she and her husband had exe-
cuted to Catherine Seccombe, as trustee, and later was re-
conveyed to her husband by the one who had purchased at
that trustee's sale. Therefore, when appellant purchased the
property at sheriff's sale on May 3, 1915, under the execu-
tion which had been issued on his judgment against L. A.
Walker, the legal title immediately vested in him as such
purchaser, subject only to the prior mortgage to Temple,
then in process of being foreclosed by Boals, and subject
likewise to the prior judgment lien in favor of The Grange
Company—later assigned to Stickney—as well as to L. A.
Walker's right to redeem the property from the sheriff's
sale to appellant. Upon Woodruff's redemption of the prop-
erty from the foreclosure sale to Stickney, the effect of that
sale was terminated. Thereupon, so the argument runs, the
legal title revested in appellant, and he is now the uncon-
ditional holder thereof. The logic of this contention seems
irrefutable.

It will conduce to a readier understanding of the respective rights of the parties on and after Woodruff's redemption from the mortgage foreclosure sale if we consider the effect on the title of each successive step from and after the sheriff's sale to appellant on May 3, 1915.

[2] Without doubt appellant is correct in his contention that when the property was sold to him at sheriff's sale on May 3, 1915, under his judgment against L. A. Walker, he received the legal title to the property. He received a qualified legal title, but the legal title nevertheless. It was a title that was subject to the prior mortgage to Temple and to the prior judgment lien in favor of The Grange Company—subsequently held by Stickney—and subject to be defeated by a redemption by L. A. Walker at any time within twelve months from the sheriff's sale to appellant, and subject also to L. A. Walker's right to remain in possession until such time as the sheriff's deed should be executed to appellant. "If the judgment is a lien upon the real property the purchaser is substituted to and acquires all the right, title, interest and claim of the judgment debtor on or at any time after the day such judgment became a lien on such property." (Code Civ. Proc., sec. 700.) "The execution of the [sheriff's] deed gave to the purchaser at the sale no new title to the land purchased by him, but was merely evidence that his title had become absolute. Upon the sale he acquired 'all the right, title, interest and claim of the judgment debtors thereto' (Code Civ. Proc., sec. 700), subject to be defeated by a redemption within six months, and to the right of the judgment debtors to remain in the possession of the land until the execution of the sheriff's deed." (*Robinson* v. *Thornton,* 102 Cal. 680 [34 Pac. 120].) To the same effect are *Pollard* v. *Harlow,* 138 Cal. 390 [71 Pac. 458, 648], and *Leet* v. *Armbruster,* 143 Cal. 666 [77 Pac. 653]. In the Pollard case it was held that the purchaser under execution sale acquires the legal title of the judgment debtor, defeasible upon condition subsequent, and that the effect of the sheriff's deed is not to create a new title but is merely evidence that the title of the purchaser has become absolute.

[3] By the sheriff's sale to appellant on May 3, 1915, his judgment against L. A. Walker was satisfied, and his judgment lien thereupon ceased to exist. When property is

sold under execution for the full amount of the judgment, the lien created by the levy is thereby extinguished.

A "redemptioner," as that word is used in sections 701 et seq. of the Code of Civil Procedure, is a creditor "having a lien by judgment or mortgage on the property sold," subsequent to that on which the property was sold. (Code Civ. Proc., sec. 701, subd. 2.) Appellant, therefore, whose judgment was extinguished by the sheriff's sale to him, was not a "redemptioner" within the code meaning of that word, and, therefore, he was not entitled to redeem as a "redemptioner" from the subsequent mortgage foreclosure sale to Stickney. But though not entitled to redeem from that sale as a "redemptioner" under subdivision 2 of section 701, appellant did become and was the "successor in interest" of L. A. Walker, the principal judgment debtor in the mortgage foreclosure suit and the sole holder of the legal title immediately prior to the sheriff's sale to him; and, therefore, as such "successor in interest" of L. A. Walker, he was entitled to redeem from the foreclosure sale to Stickney under subdivision 1 of section 701. (*Pollard* v. *Harlow, supra.*)

Such was the condition of the title on August 18, 1915, when Woodruff, under whom respondents claim, purchased at the trustee's sale held under the deed of trust which the Walkers had executed to Hatch, as trustee, on October 16, 1914. [4] This trustee's sale to Woodruff did not divest appellant of the legal title which had come to him through the sheriff's sale of May 3, 1915. The sheriff's sale to appellant gave him the title as of the date of his judgment lien, September 14, 1914, which was prior to the execution of the trust deed to Hatch. By the trustee's sale to Woodruff the latter may have become the "successor in interest" of L. A. Walker, and as such may have been entitled to redeem the property from the execution sale to appellant. This, however, Woodruff never did. Indeed, no attempt to redeem the property from the sheriff's sale to appellant ever was made by anyone. It follows, therefore, that the title which vested in appellant on May 3, 1915, when the property was sold to him at sheriff's sale, is still in him, save in so far as it may have been divested by the subsequent foreclosure sale to Stickney under the Temple mortgage and by Woodruff's redemption from that sale. The next question, there-

fore, is: What effect did the mortgage foreclosure sale to Stickney have upon appellant's title?

The Temple mortgage, it will be recalled, antedated the judgment lien which appellant acquired upon recording the abstract of his judgment against Walker. It follows, therefore, that when the property was sold to Stickney on February 11, 1916, under the mortgage foreclosure sale, Stickney received the legal title subject only to the right of the judgment debtor L. A. Walker to remain in possession pending the time allowed for redemption and to defeasance upon redemption by any person qualified to redeem from the foreclosure sale. As has been stated, Hatch, as trustee under the trust deed, Woodruff, the purchaser from the trustee L. O. Hatch, and C. W. Bateman, the appellant here, each of whom had acquired his interest subsequent to the date of the Temple mortgage, and Mr. and Mrs. Walker were made defendants to the suit which Boals brought to foreclose that mortgage. Therefore, subject to the right of L. A. Walker to remain in possession pending the time allowed for redemption, the foreclosure sale to Stickney extinguished all the rights and claims of the above-named defendants in the mortgage foreclosure action, save that there was left in the mortgagors and judgment debtors, L. A. Walker and Mary J. Walker, and in appellant, as the successor in interest of L. A. Walker, and possibly also in Woodruff, as a "successor in interest" of the judgment debtors L. A. and Mary J. Walker, the right to redeem from the foreclosure sale. [5] The effect of a foreclosure sale "is of itself to extinguish the right and claim of all the defendants in the action acquired subsequent to the date of the mortgage, and to vest in the purchaser the title of the mortgagor at the date of the mortgage, discharged of all such right and claim." (*Sichler* v. *Look,* 93 Cal. 600, 610 [29 Pac. 220]; *McNutt* v. *Nuevo L. Co.,* 167 Cal. 459, 464, 465 [140 Pac. 6]. See, also, *Duff* v. *Randall,* 116 Cal. 229, 230 [58 Am. St. Rep. 158, 48 Pac. 66]; *Pollard* v. *Harlow, supra,* and *Leet* v. *Armbruster, supra.*)

[6] As we presently shall show, a redemption by the "successor in interest" of a judgment debtor terminates the sale and vests the title in such "successor in interest." From this it follows that if appellant, as the "successor in interest" of L. A. Walker, had redeemed the property from

the foreclosure sale to Stickney, such redemption would have terminated the sale to Stickney, and would have revested the title in appellant. But though appellant did not exercise his right to redeem from the foreclosure sale, Woodruff did, and Stickney, as the purchaser at that sale—or the sheriff for Stickney—accepted from Woodruff the amount necessary to effect a redemption, namely, the sum of $4,214.23. The next question, therefore, which presents itself for consideration is: What effect did Woodruff's redemption from the foreclosure sale have on the title to the property? This is, indeed, the ultimate question presented for our determination on this appeal.

Regardless of any question as to Woodruff's right to redeem the property from the mortgage foreclosure sale to Stickney, there can be no question here as to the validity of that redemption. It is the *effect* of that redemption, not its validity, that confronts us. Stickney, from whom the redemption was made, cannot question its validity even though appellant, and not Woodruff, was Walker's "successor in interest" by virtue of the sheriff's sale made to him under a judgment lien that antedated the trust deed under which Woodruff deraigned his claim of title. Stickney accepted payment of the redemption money. [7] And the rule is that if the person from whom the redemption is made consents and accepts payment of the redemption money, it is as to him a valid redemption, even though the person making it be not qualified to redeem. Upon principles of estoppel, the person from whom the redemption is thus made will be precluded from questioning it. (3 Freeman on Execution, 3d ed., p. 1885.) Nor can any party to this action be heard to question the validity of Woodruff's redemption, since each is asserting its validity as the basis of his claim of title. What, then, was the effect upon the title of the redemption made by Woodruff?

In order to determine the effect of Woodruff's redemption upon the title to the property it is necessary to consider the capacity in which Woodruff made his redemption from the foreclosure sale. If he made it as the "successor in interest" of the judgment debtors and mortgagors, L. A. and Mary J. Walker, the effect of the foreclosure sale to Stickney was terminated; whereas, if Woodruff can be deemed to have made the redemption in the character of a

"redemptioner," within the technical meaning of that term as used in subdivision 2 of section 701 of the Code of Civil Procedure, he succeeded to the rights of the purchaser, Stickney; for the rule is that one who redeems from an execution sale as a "redemptioner" succeeds to the interests of the purchaser at the execution sale as fully as if he had purchased the certificate of sale. [8] If lienors, whether by judgment or mortgage, redeem, the course of the sale is not thereby impeded or precluded, but finally culminates in a deed to the redemptioner, who will succeed to all the rights which the purchaser at the execution sale would have possessed had no redemption been made. But a redemption by the judgment debtor has a very different effect. It terminates the sale, and restores the estate. The statute has provided for a redemption by but two classes of persons—the judgment debtor (or his successor in interest) and creditors having liens by judgment or mortgage. A redemption by the latter class is for the purpose of securing a sheriff's deed in pursuance of the sale; a redemption by the former class is inimical to the sale, and puts an end to it. "If the judgment debtor redeem, the effect of the sale is terminated, and he is restored to his estate." (Code Civ. Proc., sec. 703.) And such also is the effect of a redemption by the judgment debtor's "successor in interest." [9] The term "judgment debtor," as used in these code sections, includes the words "successor in interest" of the judgment debtor. While the words "successor in interest" are mentioned in section 701 only, and the succeeding sections refer exclusively to the judgment debtor and to redemptioners, still when in these succeeding sections the code uses the term "judgment debtor," as contradistinguished from "redemptioners," the words must be construed broadly enough to include "successors in interest" of the judgment debtor. (*Phillips* v. *Hagart,* 113 Cal. 555 [54 Am. St. Rep. 369, 45 Pac. 843].) For these reasons it must be held that if Woodruff redeemed in the character of a "successor in interest" of L. A. Walker or of L. A. and Mary J. Walker, the judgment debtors in the mortgage foreclosure suit, the effect of the redemption was to terminate the sale and to revest the title in L. A. Walker or in the person who had succeeded to that judgment debtor's estate, i. e., the person

in whom the legal title would be had there been no foreclosure sale under the Temple mortgage.

That Woodruff could redeem only in the capacity of a "successor in interest" and not as a "redemptioner" is manifest. A "redemptioner," as we have seen, is one who is a creditor of the judgment debtor "having a lien by judgment or mortgage." (Subd. 2, sec. 701, Code Civ. Proc.) But Woodruff was not "a creditor having a lien by judgment or mortgage." The trust deed under which he purchased at the trustee's sale conveyed to his grantor, the trustee L. O. Hatch, the legal title so far as was necessary to the execution of the trust. That is, though the trust deed carried with it none of the incidents of ownership other than the right to convey the title upon default on the part of the trustors, it did pass the legal title. [10] The *result* of the enforcement of a trust deed may be, for all practical purposes, the same as the enforcement of a mortgage with power of sale; but a trust deed is not a mortgage and does not create a lien. (*Weber* v. *McCleverty,* 149 Cal. 316 [86 Pac. 706]; *MacLeod* v. *Moran,* 153 Cal. 97 [94 Pac. 604]; *Athearn* v. *Ryan,* 154 Cal. 554 [98 Pac. 390]; *Bryant* v. *Hobart,* 44 Cal. App. 315 [186 Pac. 379].) The effect of such a deed, says the court in the Weber case, is to convey the legal title to the trustee, who is thereby vested with the absolute legal title to the premises so far as is necessary to enable him to convey it to the purchaser at the trustee's sale free of all right, title, interest, or estate of the trustors, or of anyone claiming under or through them by subsequent conveyance. [11] Moreover, even if the trust deed to Hatch, instead of passing the legal title to him as trustee, had created but a "lien" for the security of the indebtedness due by L. A. Walker to Woodruff, nevertheless, when Woodruff purchased at his trustee's sale it would be the title which, subject to all prior rights, interests, liens, and titles, would pass to him as purchaser at that sale. So that if it were true that prior to his purchase he had possessed but a lien for his security, such lien would have been merged in the title which he would have purchased at his trustee's sale. Therefore, in any view of the case, Woodruff cannot be regarded as a lienor at the time when he redeemed the property from the mortgage foreclosure sale to Stickney.

It follows, therefore, that Woodruff was not a "redemptioner," as that word is used in subdivision 2 of section 701 of the Code of Civil Procedure and in the subsequent sections, but that by his purchase at the trustee's sale, he became the "successor in interest" of the judgment debtors or mortgagors—so far as there remained in the latter any interest subsequent to the sheriff's sale to appellant on May 3, 1915. And since Woodruff could redeem from the foreclosure sale, if at all, only in the capacity of a "successor in interest," his redemption extinguished that sale—annulled it—and restored the title. (Code Civ. Proc., sec. 703.)

But though the effect of Woodruff's redemption was to terminate the foreclosure sale to Stickney, which ordinarily would leave the legal title in appellant as the original successor in interest of L. A. Walker just as though the property never had been sold under the mortgage foreclosure decree, respondents seem to think, simply because the redemption from that sale was made by Woodruff and not by appellant, that the title was diverted from appellant to Woodruff. The basis for this claim seems to lie in the assumption that the only right to which appellant succeeded as the purchaser of L. A. Walker's estate at the sheriff's sale on May 3, 1915, was Walker's right to redeem the property from the foreclosure sale to Stickney. Upon this assumption it is argued that because appellant did not redeem the property from the sale to Stickney he lost his right of redemption and now is left with nothing. But respondents are in error when they assume that appellant succeeded only to Walker's right to redeem the property from the foreclosure sale. Appellant, it is true, by his purchase at the sheriff's sale did acquire the right to redeem from the mortgage foreclosure sale to Stickney, but he also acquired something very much greater than the mere statutory right to redeem. He succeeded to all of Walker's title and estate. Before the foreclosure sale to Stickney, appellant, as the purchaser at the sheriff's sale under his judgment against Walker, held the legal title—a qualified and conditional legal title, it is true, but a legal title which, subject to the effect of the mortgage foreclosure sale, became absolute on receipt of the sheriff's deed executed to appellant on May 4, 1916.

[12] L. A. Walker, as one of the judgment debtors named in the mortgage foreclosure decree, had the right to redeem from the foreclosure sale, even though appellant had succeeded to all of his title to the premises. The statutory right of a judgment debtor to redeem is not affected by the fact that, by the transfer of his estate to another, he no longer has the title. (*Yoakum* v. *Bower,* 51 Cal. 539; *Southern California L. Co.* v. *McDowell,* 105 Cal. 99 [38 Pac. 627].) If Walker had exercised the right given him by the statute to redeem from the foreclosure sale to Stickney, not only would the effect of that sale have been terminated—save in so far as it had completely satisfied the mortgage lien and The Grange Company's judgment lien—but the title would have been revested immediately in appellant, as Walker's successor in interest. The same result must follow the redemption made by Woodruff; for Woodruff, as the purchaser under the deed of trust which the Walkers had made to Hatch as trustee, possessed no right that was superior to any of the rights held by his predecessor, L. A. Walker.

Mrs. Walker, it will be recalled, was divested of all interest in the property on April 11, 1914, when it was sold under the trust deed which she and her husband previously had executed to Catherine Seccombe. And though the purchaser at that trustee's sale later reconveyed the property to the husband, L. A. Walker, the trust deed to Hatch, under which Woodruff, the predecessor of respondents here, claimed title, was executed after Mrs. Walker had been divested of all interest in the land. It follows, therefore, that Woodruff, if he possessed any right of redemption whatever, was only entitled to redeem as a ''successor in interest'' of L. A. Walker, or, if you please, as a ''successor in interest'' of L. A. and Mary J. Walker—Mary J. Walker having been named as a grantor in the trust deed to Hatch—and that for all the purposes of a redemption from the foreclosure sale to Stickney, Woodruff possessed no right that was superior to those possessed by L. A. Walker, and hence a redemption by him had no other effect than a redemption by L. A. Walker would have had.

A somewhat similar question was considered by the Minnesota supreme court in a case involving an analogous, though not an identical situation. That case arose under

statutory provisions quite similar to our own with respect to the effect of a redemption by a judgment debtor or his successor in interest. In the case referred to—*Kopp* v. *Thele,* 104 Minn. 267 [15 Ann. Cas. 313, 17 L. R. A. (N. S.) 981, 116 N. W. 472]—the plaintiff, Carolina Kopp, and the defendant Louis C. Kopp, as husband and wife, had executed a mortgage on the husband's land, which was foreclosed. The husband did not redeem from the foreclosure sale, but the plaintiff, as his wife, did, and thereupon went into possession. Thereafter Mr. and Mrs. Kopp were divorced, and subsequently Kopp conveyed his interest in the land to the defendant Thele. Upon this state of facts the Minnesota court held that the plaintiff, by virtue of her statutory interest in the land as the wife of the owner, had a right to redeem the mortgaged premises from the foreclosure sale, and that such redemption annulled the sale, but that notwithstanding such redemption by the wife, Thele, the husband's grantor, owned the land, subject only to a lien in favor of the plaintiff for the amount she had paid to redeem, with interest, less the net value of the use of the land while in her possession. After stating that the Minnesota statute provides that the mortgagor, his personal representative or assigns, may within twelve months redeem the land sold on foreclosure sale, and that if any of them does the redemption annuls the sale, the court said: "It follows that, when the plaintiff redeemed in this case, the foreclosure sale was annulled, leaving the legal title to the land the same as if the mortgage had never been given. Therefore, her redemption could not have the effect, either in law or equity, of transferring the husband's title to the land to her. But, she having redeemed for the protection of her own interest in the premises, which necessarily resulted in protecting her husband's title, she was not a mere volunteer. Hence she is entitled, by subrogation, to an equitable lien upon the land for the amount paid on the redemption." The reasoning of the Minnesota court is equally applicable here. When Woodruff redeemed, the foreclosure sale to Stickney was terminated (Code Civ. Proc., sec. 703), thereby leaving the legal title to the land the same as if no mortgage had been given. Therefore, his redemption could not have the effect, either in law or in equity, of transferring appellant's title to him.

[13] But though the effect of Woodruff's redemption from the foreclosure sale was to revest appellant with the legal title, so that he may successfully maintain this suit to quiet title, still, in seeking equity, he must do equity. Appellant's title escaped the consequences of the mortgage foreclosure sale to Stickney only because Woodruff, for whose supposed title the respondents paid the sum of $5,103, redeemed the land by paying to Stickney $4,212.35. Appellant cannot come into a court of equity asking to have his title quieted without doing equity. And we think it but equity that he should pay to respondents, as Woodruff's successors in interest, the amount which was paid by Woodruff—a payment which has made it possible for appellant to regain his title—with legal interest thereon from the date of Woodruff's redemption, less, of course, the net value of the use of the land while in the possession of Woodruff and his successors. For this purpose respondents, upon the going down of the *remittitur*, should be given permission, if so advised, to amend their answer by setting up their equities and praying for relief accordingly.

For the foregoing reasons the judgment must be reversed and the case remanded for retrial, unless we can say that there is merit in certain points raised by respondents and now about to be considered.

It is claimed by respondents that the decree foreclosing the Temple mortgage established the fact that appellant was the holder of a judgment lien only, not that he acquired the title as a purchaser at execution sale, and that by that decree the court foreclosed appellant's judgment lien. The record of the foreclosure proceedings does not bear out this contention. In his answer in that case appellant set up more than a claim to a mere judgment lien. His answer set forth, briefly but chronologically, the recovery of his judgment against Walker in the justice's court, the filing of an abstract of that judgment in the office of the county recorder, the issuance of a writ of execution on that judgment, the sheriff's sale of the premises to him as the purchaser at execution sale, and the issuance to him of the sheriff's certificate of sale; and he prayed that he receive from any surplus remaining from the proceeds of the foreclosure sale "the amount necessary to *redeem* said property from the *sale* to him." From this it will be seen that

appellant did not claim to be a mere lienor, but that, on the contrary, by alleging a sheriff's sale of the premises to him under execution, he in effect alleged facts which showed that the judgment lien once held by him was entirely satisfied and extinguished. And the decree in that case, though it recites that formal findings were waived, declares that "all the allegations of . . . the answer of the defendant C. W. Bateman [the appellant here] . . . are true." While it is true that the prayer of Bateman's answer in that case asks that if any surplus should remain after satisfying all prior claims he might receive therefrom "the amount necessary to *redeem* said property" from execution sale to him, still the fact is that there was no surplus available for the purpose, and hence no such forced *redemption* of the land from the execution sale to appellant ever was effected. Bateman, therefore, according to the averments of his answer in the mortgage foreclosure case, remained in the position in which he was immediately prior to the entry of the mortgage foreclosure decree, namely, the holder of the title under execution sale, subject only to the prior encumbrances and to the right of his judgment debtor to remain in possession and to redeem from the execution sale to him at any time prior to the expiration of the twelve months.

[14] Nor did the foreclosure decree adjudge that appellant is merely the holder of a judgment lien. The language of the decree is: " . . . the said C. A. Bateman has a lien against the property herein mentioned in the sum of $144, and also for his costs herein laid out and expended, taxed at —— dollars, *by reason of a certain sheriff's certificate of sale* under execution which was issued on a judgment given and made on September 3rd, 1914, in the Justice's Court of Los Nietos township." (Italics ours.) The words which we have italicized show the precise nature of Bateman's interest. By the sheriff's certificate of sale, the execution of which is found by the foreclosure decree, Bateman acquired the legal title—a qualified and conditional legal title, but the legal title nevertheless, and not a mere lien. It is true that the foreclosure decree designates Bateman's interest, erroneously, as a "lien." The error in thus denominating appellant's interest appears on the face of the decree itself, since it expressly finds that the interest, what-

ever it was, existed "by reason of a certain sheriff's certificate of sale." This erroneous designation of appellant's interest is not conclusive in the present action. For whether his interest in the land was merely that of a lienor or whether it was that of the holder of the legal title is a question the determination of which was not necessary to the relief prayed for by appellant in the answer filed by him in the mortgage foreclosure action. Nor was the determination of that question necessary to the relief which was awarded by the decree in that action. A determination of that question one way or the other would not, and could not, have affected the court's decision and the relief awarded by its decree. The precise technical character of the interest which Bateman acquired by his purchase under the execution on his judgment against Walker was not a matter that was tendered for litigation in the mortgage foreclosure suit, nor was it actually litigated therein. [15] A question which is only incidentally involved and which is not actually litigated, that is, made the subject of trial and pressed upon the consideration of the court, is not concluded by the judgment so as to be *res adjudicata* in a subsequent suit on a different cause of action. (*Fulton* v. *Hanlow,* 20 Cal. 450, 486–489; *Ferrea* v. *Chabot,* 63 Cal. 564, 567 et seq.; *Chapman* v. *Hughes,* 134 Cal. 655 [58 Pac. 298, 60 Pac. 974, 66 Pac. 982].)

[16] Finally, it is contended by respondents that the execution sale under which appellant claims title was fatally defective in certain particulars. It seems that two calls were omitted from the description of the property in the sheriff's certificate of sale to Bateman and likewise in the notices of that sale. But this notwithstanding, the remaining calls in the description as given in the certificate of sale and in the notices were sufficient to describe the property and to identify it as the land in controversy. This was clearly shown by the testimony of an experienced surveyor. The land is described in the certificate of sale as a part of a larger tract—as a part of lot 11 of tract No. 688, as per map recorded in book 15, page 171 of maps, records of Los Angeles County. Lot 11, as shown by the map referred to in the description, contains 19.49 acres. One of the calls in the description as given in the sheriff's certificate is a line which bisects lot 11. It is a line which runs northerly from

a fixed point in the southerly boundary line of the lot to a fixed point in the northerly boundary line. It clearly appears from the description as given in the certificate of sale that the property intended to be sold by the sheriff lies to the east of this bisecting line. The certificate of sale and the notices give the area of the land sold as 14.58 acres. By a simple arithmetical calculation based on the data afforded by the description given in the notices and in the certificate of sale, including the map referred to therein, it can readily be ascertained that 14.58 acres is the exact area of *all* of that part of lot 11 which lies east of the above-mentioned line. It necessarily follows, therefore, that the land intended to be sold and which was sold was all of that part of lot 11 which lies to the east of that call in the description which describes the line that bisects the lot— the line which begins at a definite point in the southern boundary of the lot and extends to a definite point in the northern boundary. The description was, therefore, sufficient to enable bidders at the sale to ascertain the precise parcel of land to be sold.

The description would certainly have been sufficient for a voluntary conveyance; and what is sufficient for such a conveyance will suffice for an involuntary conveyance. There is high authority for so holding. In *White* v. *Luning,* 93 U. S. 514 [23 L. Ed. 938, see, also, Rose's U. S. Notes], the court says: " . . . in many respects the rules of construction are different, but this difference does not extend to the description of the property conveyed. In this regard the rules are the same, whether the deed be made by the party in his own right or by an officer of the court. The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor so as to secure, if it can be done consistently with legal rules, the object they were intended to accomplish." To the same effect is *Hermann* v. *Likens,* 90 Tex. 448 [39 S. W. 282].

[17] There is no merit in respondents' claim that the error in the date of the sheriff's deed to appellant is fatal to the latter's claim of title. It seems that the deed bears date "May 4, *1914,*" instead of "May 4, *1916,*" and respondents suggest that because delivery is presumed to have

been made at the date which a deed bears, the recording of a sheriff's deed bearing such an erroneous date as the one in question here can afford no notice to subsequent purchasers that the property was sold to appellant on May 3, 1915—a year *later* than the date which the deed bears. But the sheriff's deed to appellant gave him no new title; it was simply evidence that the title which he had acquired at the sheriff's sale had become absolute. (*Robinson* v. *Thornton, supra.*) The recording of the sheriff's certificate of sale to appellant was alone sufficient to charge Woodruff and all other subsequent purchasers with notice of appellant's title. The sheriff is required to file a duplicate of the certificate of purchase in the office of the county recorder for record (Code Civ. Proc., sec. 700a); and his return on the writ of execution is *prima facie* evidence of the facts stated therein (Pol. Code, sec. 4159). His return on the execution pursuant to which he sold the property to appellant, dated May 3, 1915—the date of the sale—states that a duplicate of the certificate had been filed for record with the county recorder. This, therefore, is *prima facie* evidence that on the date of the sale to appellant a duplicate of the certificate of sale was duly recorded. Woodruff, therefore, and his successors in interest, the respondents here, had notice that the property was sold by the sheriff to appellant on May 3, 1915, regardless of any error in the date of the subsequently executed sheriff's deed to appellant.

The judgment is reversed, with directions to permit respondents to amend their answer, if so advised, by alleging any facts showing them, or any of them, to be possessed of equities entitling them, or any of them, to reimbursement for outlays and to an equitable lien therefor.

Works, J., and Craig, J., concurred.