**G. ABRAMSON and Howard Miller, Appellants,**

v.

**George GARDNER, Trustee in Bankruptcy of the Estate of Feldman-Selje Corporation Bankrupt, Appellee.**

No. 15531.

United States Court of Appeals Ninth Circuit.

March 11, 1958.

William J. Tiernan, Los Angeles, Cal., for appellants.

Samuel A. Miller, Los Angeles, Cal., for appellee.

Before LEMMON, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

On October 1, 1956, three creditors filed an involuntary petition in bankruptcy against Feldman-Selje Corporation, alleged bankrupt. Thereafter the referee to whom the matter was referred, on October 10, 1956, entered an adjudication of bankruptcy, and appointed the appellee, George Gardner, as receiver.

The receiver filed his petition for an order to show cause to set aside a certain execution sale hereinafter described in detail. A hearing was held, and Findings, Conclusions, and Order made and entered against appellants herein by the referee, setting aside the sale. On peti-

tion for review, the District Court affirmed the Findings, Conclusions and Order. Rule 204, Bankruptcy Rules of the District Court of Southern California, West's Ann.Code. Appeal is taken here. Fed.R. of Civ.P. 72 to 76, 28 U.S.C.A.

The sale which was the subject of attack, was of personal property (to wit: unfinished desks) previously attached through a writ of attachment levied by one G. Abramson, a secretary in the office of her counsel, on August 27, 1956. On August 24, 1956, she had filed suit against the subsequently bankrupt corporation based on an assigned claim. After a default judgment was entered on September 7, 1956, and pursuant to a subsequent writ of execution, a sheriff's sale was had on September 12, 1956, for the sum of $500, which was credited against Abramson's judgment.

Abramson then sold said goods to Howard Miller for $500. A bill of sale therefor was recorded. The petition filed by trustee Gardner to set aside the sale charged that these unfinished desks had never been removed from the premises of the bankrupt, and when the receiver took possession of the premises of the bankrupt, he found such personal property thereon and took possession thereof. The referee ruled that the $500 paid to Abramson by Miller be repaid to him.

The receiver, after setting aside the sale, but sometime before the District Court hearing below, sold the personal property, to wit: the unfinished desks, at auction for $6,817.61.

Appellee now holds this $6,817.61 subject to this Court's decision, and the appellants claim that sum, offering to restore to appellee or anyone the Court may direct, the $500 purchase price.

The questions involved are these, according to appellant:

(1) Did Abramson (and through her, Miller) acquire valid title to the personal property?

(2) Can appellants' title be invalidated by the trustee?

(3) Isn't the subsequently-appointed trustee in bankruptcy limited to the recovery of a preference under § 60 of the Bankruptcy Act [11 U.S.C.A. § 96]?

(4) Should the judgment creditor occupy a different status than any other bidder?

(5) Are the appellants entitled to the fund?

■ Our answers to the odd-numbered questions are in the negative, and to the even-numbered, in the affirmative.

We should first note that it is conceded that appellant Miller stands in the same position as appellant Abramson, insofar as title and the right to possession are concerned.

We consider all points raised at one time.

Appellee-receiver argues that no valid title could pass to appellants because of Section 67, sub. a(1) of the Bankruptcy Act (11 U.S.C.A. § 107, sub. a(1)) which reads:

"*Every lien* against the property of a person *obtained by attachment, judgment,* levy, or other legal or equitable process or proceedings *within four months* before the filing of a petition intiating a proceeding under this Act by or against such person *shall be deemed null and void* (a) *if at the time* when such lien was obtained *such person was insolvent,* \* \* \*." [Emphasis added.]

Appellee urges that suit was filed, the lien attached, and the subsequent judgment obtained all well within the prescribed four months, and that the evidence discloses counsel for the attaching creditor (of whom Abramson was the assignee) was fully aware of the then insolvency of the subsequent bankrupt; and that the bankrupt and his trustee never lost possession of the personal property.

Appellant claims that under the controlling California law the execution sale extinguishes the attachment lien and converts the purchaser's rights into right to title and right to possession. In support thereof, appellant cites several cases. Bateman v. Kellogg, 59 Cal.App. 464, 211

P. 46, is not in point, for the quotation therefrom cited in appellant's brief refers to property "sold under execution *for the full amount of the judgment,*" a condition not here existing.

The general rule quoted by appellant from Pepin v. Stricklin, 1931, 114 Cal. App. 32, 299 P. 557, 558, is good law—but it applies to purchases upon execution sales where "the judgment creditor \* \* \* *is a bona fide purchaser and not bound by any secret interest of which he is not put upon notice, actual or constructive.*"

Here, appellant sought to buy for a portion of the judgment (not the full amount) from a debtor whom purchaser's counsel admittedly knew was insolvent and from whom any transfer of title within four months from the possible bankruptcy might be declared null and void as a preference.

Appellants insist the trustee has erroneously sought relief under § 67 of the Bankruptcy Act (11 U.S.C.A. § 107) rather than § 60 (11 U.S.C.A. § 96). It is their theory that § 107, sub. a(1) refers to liens obtained by attachment, judgment or levy; that here the attachment lien was ended by the judgment and execution thereafter; that the execution lien was terminated by the sale; and, that no lien was in existence when the involuntary petition in bankruptcy was filéd, and hence any relief available to the trustee must come from § 60 of the Bankruptcy Act (11 U.S.C.A. § 96) referring to avoidance of preferences, rather than avoidance of liens.

■ If the judgment and the lien obtained by levy of execution out of a state court are obtained against an *insolvent* person within four months of the filing of a petition in bankruptcy, the subsequent adjudication of bankruptcy makes the lien *voidable,* and a sheriff's sale on such execution to one with notice of petition or insolvency may be set aside. Fischer v. Pauline Oil & Gas Co., 1939, 309 U.S. 294, 301, 60 S.Ct. 535, 84 L.Ed. 764, rehearing denied 309 U.S. 697, 60 S.Ct. 706, 85 L.Ed. 1037; Pauline Oil & Gas Co. v. Fischer, 191 Okl. 346, 130

P.2d 305; Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 1924, 264 U.S. 426, 429, 44 S.Ct. 396, 68 L.Ed. 770; Staunton v. Wooden, 9 Cir., 1910, 179 F. 61; In re Riccobono, D.C.Cal., 1956, 140 F.Supp. 654; Peterson v. Groesbeck, 1937, 20 Cal.App.2d Supp. 753, 64 P.2d 495; 11 U.S.C.A. § 107, Notes 195, 244.

■ The effect of lack of change of possession of the property executed against is controlling in this case. This is so even if real property is involved. Manders v. Wilson, 9 Cir., 1916, 235 F. 878. It permits the trustee at all events to proceed under § 67 rather than § 60 of the Bankruptcy Act. Appellant cites Collier on Bankruptcy (14th Ed.) Vol. 4, p. 147:

"Where the lien of a judicial proceeding is enforced by the sale of the debtor's property subject thereto and the proceeds paid over to the lien creditor prior to the debtor's bankruptcy, the lien becomes merged in the payment and accordingly cannot be affected by Section 67, notwithstanding the occurrence of bankruptcy within four months of the acquisition of the lien." [Appellant's Opening Brief, p. 12.]

Appellant fails to quote the next sentence, which relies on a United States Supreme Court case directly opposed to appellant's position (at least as far as proceeds in the hands of the sheriff, after execution sale, are concerned):

"Where the lien has not thus been converted into title, however, nullification, where affected, relates back to the act giving rise to the lien, and affects that and all subsequent proceedings, \* \* \*" Clarke v. Larremore, 1902, 188 U.S. 486, 23 S.Ct. 363, 47 L.Ed. 555.

Was the lien here "converted into title"? Not unless the purchaser was a bona fide purchaser. Quoting Collier, p. 160, note 6:

"Knowledge of the bankrupt's insolvency \* \* \* hardly seems compatible with good faith on the part of the purchaser of his prop-

erty. \* \* \* The sufficiency of notice or cause for enquiry is ordinarily a question of fact."

and,

"A lien creditor who purchases property at a judicial sale to enforce his lien \* \* \* was generally not regarded as a bona fide purchaser for value." (Collier, p. 163.)

Appellant largely relies on the District Court case of In re Bailey, D.C.Or., 1906, 144 F. 214, 216.

It should be noted that in the Bailey case,

"\* \* \* everything had been done that was required by law to be done for a transfer of the debtor's property to the purchaser, through the process of the court, \* \* \*."

Everything was not here done.

It is true that under § 67, sub. f of the Bankruptcy Act of 1898, the bankruptcy court did not have jurisdiction to determine controversies arising either in summary or plenary proceedings,[1] with one important exception. But the general rule was changed by the first sentence of § 67, sub. a(4), of the 1938 Act,

"\* \* \* conferring on the bankruptcy court summary jurisdiction of any proceedings under § 67, [sub.] a." Collier, supra, p. 164; In re Rand Mining Co., S.D.Cal., 1947, 71 F.Supp. 724.

The one important exception mentioned above which has always given the trustee authority to seek recovery is when *possession* of the property in dispute came into the hands of the trustee. Under such a circumstance, the trustee can proceed summarily.[2]

When there is no change of possession, the transfer is presumed fraudulent.[3]

The Findings of Fact recite that the bankrupt was insolvent; that this fact was known to the purchaser; that she was not a purchaser in good faith at the judicial sale; that she obtained a preference over other creditors; that her transfer of title to Miller was not a judicial sale, nor was there fair value paid.[4]

We find ample support in the evidence for these findings; they were not clearly erroneous, and the judgment of the District Court is affirmed.

1. Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770.

2. "Whenever the bankruptcy court *has possession*, it could under the Act of 1898, as originally enacted, and can now, determine in a summary proceeding controversies involving substantial adverse claims of title under e of § 67, under b of § 60, and under subdivision e of § 70." Collier, supra, p. 164, note 2.

3. West's Ann.California Civil Code, § 3440, provides: "Every transfer of personal property \* \* \* not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void."

4. "[when] the Attachment \* \* \* (was) \* \* \* levied, and at all times thereafter, *the bankrupt was wholly insolvent*, and that the said Respondent G. Abramson *not only had reasonable cause to believe but had actual knowledge of said fact;* and that the said Respondent G. Abramson knew when she attempted to purchase the said property at said execution sale by giving a credit of $500.00 on her judgment, that she was obtaining a preference over other creditors of the same class, and knew that in the event of bankruptcy within four months of such attempted preferential purchase, she would be required to surrender the said preference; *and that therefore, she was not a bona fide purchaser at said judicial sale,* but was attempting to obtain a preference over other creditors of the same class.

"That the purported sale by the Respondent G. Abramson to the Respondent Howard Miller, *was a private sale and not a judicial sale;* and that the $500.00 paid by Respondent Howard Miller was not the fair equivalent value of said property; and that the title obtained by said Howard Miller is valid only to the extent of the $500.00 which he paid; and that upon the return to him of said $500.00, he has no further right, title or interest in or to any of the property in controversy." Findings of Fact, Tr. p. 23. [Emphasis added.]