[L. A. No. 1758. Department One.—April 5, 1907.]

J H. ODELL, Respondent, v. W. J. COX, Appellant.

EXECUTION SALE—INADEQUACY OF PRICE—SETTING ASIDE SALE FOR UN-
FAIRNESS.—Mere inadequacy of the purchase price, standing alone,
unaccompanied by any unfairness or other inequitable incident, will
not authorize the vacating of an execution sale. But such inade-
quacy is a circumstance of greater or less weight to be considered
in connection with other circumstances impeaching the fairness of
the sale as a cause for vacating it, and where the inadequacy is
palpable and great, very slight additional evidence of unfairness
or irregularity is sufficient to cause the sale to be vacated.

ID.—FRAUD OF EXECUTION PURCHASER.—Where, in addition to gross
inadequacy of price, the execution purchaser has been guilty of any
unfairness, or has taken any undue advantage resulting in such
gross inadequacy and consequent injury to the execution debtor,
he will be deemed guilty of fraud warranting the interposition of a
court of equity in favor of the execution debtor, who is himself
without fault.

ID.—SALE OF CORPORATE STOCK—PURCHASER KNOWING OF INADEQUACY
OF PRICE.—An execution sale of corporate stock, of the market
value of two thousand dollars, for the sum of twenty-six dollars
and a half, is grossly inadequate. Such sale will be set aside at
the instance of a solvent judgment debtor who had no actual
knowledge of the execution levy and of the proposed sale, and whose
ignorance was satisfactorily excused by reason of the manner in
which the levy was made and the notices of sale given, and who was
not guilty of laches, where it appears that the judgment creditor
was himself the purchaser at the sale, and knew the value of. the
property sold, and took advantage of the absence of the judgment
debtor and other bidders at the sale, to purchase the property for
what he knew to be a merely nominal consideration. And this result
will follow, although the execution levy and the notices of sale
were had and given in accordance with the letter of the law. Such
unfairness and undue advantage constituted constructive fraud.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order refusing a new trial. M.
T. Allen, Judge.

The facts are stated in the opinion of the court.

John E. Daly, and E. W. Freeman, for Appellant.

H. T. Gordon, and J. S. Chapman, for Respondent.

ANGELLOTTI, J.—On August 5, 1901, in an action for damages pending in the superior court of Los Angeles County, defendant Cox recovered judgment against plaintiff Odell for $480.65, and $103.35 costs. One John E. Daly was the attorney for Cox in the bringing of said action, and has ever since continued to act as attorney for Cox therein, although another attorney has been associated with him. A motion for a new trial was regularly made by Odell. On October 15, 1902, the motion for new trial was heard and ordered denied. On November 12, 1902, Odell served and filed his notice of appeal from said order, and on November 15, 1902, filed an undertaking on appeal and stay-bond.

In the mean time, Daly, for Cox, had, on October 24, 1902, caused a writ of execution to be issued on the judgment, which, on October 27, 1902, was placed in the hands of the sheriff of Los Angeles County, with instructions from the attorneys of Cox to levy the same upon fifteen shares of the corporate stock of the Glendora-Azusa Water Company, and two and three-tenths shares of the corporate stock of the Azusa Valley Bank, belonging to Odell. The first mentioned of these corporations had its principal place of business in the town of Glendora, some twenty-eight miles from the city of Los Angeles, and the place of business of the Azusa Valley Bank was in the town of Azusa, twenty-five miles from said city, neither of which places was in the township including such city. Odell, Cox, and Daly at the time of the levy all resided in the vicinity of the towns of Azusa and Glendora, Odell and Cox owning and residing upon adjoining tracts of land. The certificates evidencing the shares of stock owned by plaintiff were at such time, and ever since have been, in his possession. For a long time prior to such levy, and ever since, this stock has had a market value of over one hundred dollars per share, being worth in the market two thousand dollars. Daly was the secretary of the Glendora-Azusa Water Company and a director and the attorney of the Azusa Valley Bank, and Cox was a director of the water company. The execution was levied in the manner prescribed by statute (Code Civ. Proc., sec. 542, subd. 4), by leaving copies of the writ with a notice of attachment with the secretary of the water company, Daly, and with the cashier of the bank. Daly, as secretary of the water company,

gave to the sheriff a written statement that he had under his control the fifteen shares of stock of said company. The levy having been made, the sheriff gave notice on November 6, 1902, that he would sell the property on November 12, 1902, at public auction, at the Broadway entrance of the county courthouse in the city of Los Angeles. The only notice given was by posting notices at three of the doors of the said courthouse, the law providing that notice of sale in such cases shall be given by posting notice in three public places in the township or city where the sale is to take place, for not less than five nor more than ten days. (Code Civ. Proc., sec. 692, subd. 2.) Neither Daly, Cox, nor any one else ever notified or informed Odell of the levy or proposed sale, and he was entirely ignorant of any of the proceedings had until long after the sale. At the time fixed for the sale, no one was present but the deputy sheriff who made the sale, Cox, and an attorney associated with Daly in the case. The sale was then made, Cox being the only bidder, and offering what he himself testified was a nominal sum only, one dollar per share for the water company's stock and five dollars per share for the bank stock, making a total of $26.50. The stock was thereupon sold to him for that amount, $14.66 was paid to the sheriff for his fees, etc., and the remainder credited on the judgment. The writ of execution was not returned by the sheriff until February 18, 1903. Odell did not learn of the proceedings until several months after the sale, and after investigating the matter consulted attorneys with reference to his remedy and employed them to proceed in the matter, and they, on July 23, 1903, instituted this proceeding, which is an action to vacate said execution sale against Cox and the two corporations. In his complaint Odell declared his willingness to pay Cox the sum of $14.66 paid to the sheriff, and consented to the cancellation of the credit made on the judgment by reason of said sale, as a condition to the vacating of the same, and deposited with the clerk of the court the $14.66. No transfer of said stock has ever been made on the books of either of the corporations.

All the facts hereinbefore set forth were substantially alleged in the complaint, and either admitted by the evidence or found by the trial court, upon sufficient evidence.

to be true. Plaintiff further alleged that the writ was issued and the levy and sale were made in the manner described with the intent to prevent all knowledge thereof on the part of Odell until after the sale, and that all of said things were intentionally concealed from Odell for the purpose of depriving him of his property for a mere nominal sum, but the trial court found against this allegation. Doubtless, the specific facts hereinbefore enumerated would have supported, if they did not compel, a contrary conclusion, but we deem it unnecessary to discuss this matter, as we are satisfied that such facts amply warranted the vacating of the sale, even if the actual intent to defraud did not exist to the extent alleged.

The trial court gave judgment vacating the sale, enjoining the corporations from making any transfer of such stock upon their books under said sale, enjoining Cox from claiming any title to said stock under said sale, and directing the clerk of the court to pay to Cox the $14.66 deposited at the commencement of the action, and to cancel the credit of $11.84 upon the judgment in favor of Cox against Odell, made on account of said sale.

This is an appeal by Cox from said judgment and from an order denying his motion for a new trial.

It is apparent that the price for which the stock was sold was grossly inadequate. The amount bid, $26.50, when considered in connection with property having a cash value of two thousand dollars in the market, was a mere nominal sum, and the purchaser acquired this valuable property for practically nothing. It is true that it has been said over and over again by the courts that mere inadequacy of price is not a sufficient ground for refusing to confirm or vacating an execution sale. Although declarations to the contrary are to be found in some cases, this is the general rule supported by the great weight of authority (see Freeman on Executions, secs. 304i, 309), and it has often been announced by this court, though never in a case of such glaring inadequacy as is here presented. (See *Smith* v. *Randall*, 6 Cal. 47, [65 Am. Dec. 475]; *Connick* v. *Hill*, 127 Cal. 162, [59 Pac. 832]; *Anglo-Californian Bank* v. *Cerf*, 142 Cal. 303, [75 Pac. 902]; *Summerville* v. *March*, 142 Cal. 558, [100 Am. St. Rep. 145, 76 Pac. 388]; *Lacy* v. *Gunn*, 144 Cal. 511, [78

Pac. 30]; *Mayberry* v. *Whittier*, 144 Cal. 322, 327, [78 Pac. 16]; *Central Pacific R. R.* v. *Creed*, 70 Cal. 497, [11 Pac. 772].)   By the term "mere inadequacy of price" is meant simply an inequality in value between the subject-matter and the price.   The effect of this rule is that where such inadequacy stands alone, unaccompanied by any unfairness or other inequitable incident, it will not authorize the vacating of the sale.   But it is universally recognized that inadequacy of price is a circumstance of greater or less weight, to be considered in connection with other circumstances impeaching the fairness of the transaction as a cause of vacating it, and that where the inadequacy is palpable and great very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought.   In fact, according to very respectable. authority, inadequacy of price may be so gross as in itself to furnish satisfactory evidence of fraud or misconduct on the part of the officer or purchaser, and justify the vacating of the sale.   (*Graham* v. *Burgess*, 117 U. S. 180, [6 Sup. Ct. 686]; Pomeroy's Equity Jurisprudence, sec. 927; Freeman on Executions, sec. 309.)   In the section last cited, Mr. Freeman also says: "Where the inadequacy is palpable, the purchaser can retain his advantage only by showing that the proceedings are free from fault or irregularity.   If the inadequacy can be connected with or shown to result from any mistake, accident, surprise, misconduct, fraud, or irregularity, the sale will generally be vacated, unless the complainant was himself in fault, or the rights of innocent third parties have become dependent on the sale."   Numerous cases are there cited in support of the text.   In *Graffam* v. *Burgess*, 117 U. S. 180, [6 Sup. Ct. 686], the supreme court of the United States declared that if, in addition to gross inadequacy, the purchaser has been *guilty of any unfairness or has taken any undue advantage*, or if the owner of the property or party interested in it has been for any reason misled or surprised, the sale will be regarded as fraudulent and void, and the party injured permitted to redeem, and said: "Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."   The same court in the later case of *Schroeder* v. *Young*, 161 U. S. 334. [16 Sup. Ct. 512], after saying that courts are not

slow to seize upon other circumstances impeaching the fairness of the transaction as a cause of vacating it, especially if the inadequacy be so gross as to shock the conscience, said: "If the sale has been attended by any irregularity, as if several lots had been . . . sold in such manner that their full value could not be realized; if bidders have been kept away; *if any undue advantage has been taken to the prejudice of the owner of the property,* or he has been lulled into a false security; or if the sale has been collusively or in any other manner, conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner may be permitted to redeem." (The italics are ours.) We think there can be no doubt under the authorities that where, in addition to gross inadequacy of price, the purchaser has, in the language of the United States supreme court, "been guilty of any unfairness or has taken any undue advantage," resulting in such gross inadequacy and consequent injury to the owner of the property, he will be deemed guilty of fraud warranting the interposition of a court of equity in favor of the owner who is himself without fault.

In the case at bar we have an absolute lack of knowledge on the part of the owner of the property of any levy or proposed sale. This lack of knowledge on his part was entirely excusable. Probably neither he nor his attorneys had any reason to anticipate, in view of his solvency and the appeal about to be taken, that an execution would be obtained to enforce the judgment. The manner of levy, while authorized by law, was such that the owner of the property could learn of the levy in time only from such information as might be given him by the officers of the respective corporations, or the notices of sale, or casually by some one who did know the fact. No one saw fit to enlighten the owner. It may be conceded, as contended by Cox, that the notices of sale were given in the manner required by the letter of the law. It is not surprising, however, that they did not come to the knowledge of Odell, or, so far as appears, to any one else of those best acquainted with the property and its value, except Cox. No notice at all was posted in the town or neighborhood where all the parties lived, and where the corporations did their business and were thoroughly well known,

but all were posted in a large city, at a point over twenty miles away from the legal *situs* of the property and the home of the parties. Again, it may be conceded that the sale of the property might, under the strict letter of the law, be had at such place, so far removed from the *situs* of the property and the neighborhood of the parties and likely bidders. These circumstances, however, even if they do not warrant the inference of an intent to suppress, as far as the mere forms of law would permit, all notice to Odell of the proposed sale, furnish satisfactory reasons for his actual ignorance thereof.

We also have the judgment creditor taking advantage of the absence of the owner of the property, caused by his excusable ignorance of the levy and proposed sale and the absence of other bidders, by attempting to finally take such property from the owner for what is, and what he knows to be, a mere nominal consideration. It must be borne in mind that in the case of such property as is here involved there is no right of redemption in the owner, and the sale, if valid, effectually cuts off all his rights in regard thereto. It is urged in the brief of one of the counsel for Cox that it was not alleged in terms in the complaint that Cox knew the value of this stock, but the specific facts therein alleged in regard to the water stock were such as to clearly indicate such knowledge, so far as that particular stock was concerned. Cox in his testimony acknowledged that he bid a nominal sum only, and the trial court found very clearly and specifically as to his knowledge of the value of all the stock. We think there can be no doubt that this amounted to unfairness and the taking of an undue advantage on the part of Cox, and constituted sufficient ground, under the authorities, for the vacating of the sale, unless the plaintiff was guilty of laches in seeking this remedy. Under the circumstances appearing, it devolved on Cox, if he proposed to purchase the stock at this practically secret sale, in the exercise of that degree of fairness which both law and common honesty required, to offer a price bearing some semblance to what he knew to be its value, or at least to refrain from taking it for what he knew to be practically nothing. Using the language of the supreme court of the United States in *Schroeder* v. *Young,* 161 U. S. 334, [16 Sup. Ct. 512], "it

would be a reproach to a court of equity, if it could not lay hold of such a transaction as this is shown to be, and set aside a sale of property acquired under the forms of law and in defiance of natural rights.''

Upon the plea of laches, the finding in favor of plaintiff is sufficiently supported by the evidence.

Much of appellant's argument for reversal is based upon the assumption that there can be no question of fraud in the case, in view of the finding against the allegation of the complaint as to an intentional concealment by Cox and Daly of the proceedings for the sale on execution, for the purpose of obtaining the property for a mere nominal sum. This finding, however, although negativing the existence of the actual fraud alleged, did not entirely dispose of all questions of fraud. Other findings of fact, taken in connection with admitted allegations of the complaint, showed, as already indicated, unfairness and undue advantage constituting constructive fraud. (See Pomeroy's Equity Jurisprudence, sec. 922 et seq.)

The complaint sufficiently stated a cause of action as against a general demurrer for want of facts.

The judgment and order are affirmed.

Shaw, J., and Sloss, J., concurred.