[Civ. Nos. 14172, 14173. Second Dist., Div. Three. May 17, 1944.]

JNO. W. TURNER et al., Respondents, v. JAMES
DONOVAN, Appellant.

James Donovan, in pro. per., for Appellant.

Vernon Bettin, Bettin & Wait and J. Scott Weller for Respondents.

BISHOP, J. pro tem.—The defendant in this case appears as both a judgment debtor and a judgment creditor. He obtained a judgment for $3,544 against one H. W. Bateman, a resident of Montana, in the United States District Court for the District of Montana. A judgment was entered against the defendant, in the Los Angeles County action before us, in 1939. Making use of a writ of execution issued upon the Los Angeles County judgment, the sheriff of Siskiyou County served a garnishment upon Bateman, who accommodatingly appeared in this state for the purpose, and thereafter sold the $3,544 judgment to the plaintiffs for $250. The defendant moved to have the sale set aside, and from the order denying his motion took an appeal. We have determined that the order denying his motion should be reversed.

A somewhat fuller statement of facts is essential to an understanding of the appeal's problems. The writ of execution was issued under date of August 14, 1941, and the plaintiffs forwarded it to the Siskiyou County sheriff with instructions to serve it upon Bateman who, the sheriff was informed, would be at the latter's office ''sometime on Monday, August 25th, to accept service on this writ and presumably make a return.'' Plaintiffs' prediction that Bateman would appear at the sheriff's office in Yreka, California, was based upon an understanding reached with Bateman's attorneys that that judgment debtor would come within arm's reach of California process so that the claim of defendant Donovan against him, evidenced by the Montana judgment, might be sold to Donovan's judgment creditors, the plaintiffs, it being agreed that should they acquire the judgment, and should it be affirmed upon the appeal which was then pending, upon the payment to Donovan's creditors of $1,500, the $3,544 judgment would be satisfied so far as they were concerned. Some outstanding claims against the judgment, amounting to $1,000 or more, were to be taken care of by Bateman.

Judgment debtor Bateman appeared as agreed and was

served by the Siskiyou sheriff with this notice: "To Dr. H. W. Bateman AND TO WHOM IT MAY CONCERN You will please take notice, that all moneys, goods, credits, effects, debts due or owing, James Donovan and all other personal property, in your possession, or under your control belonging to the defendant named on the writ, of which the annexed is a copy, or to either or any of them, are levied upon by virtue of said writ; and you are hereby notified not to pay over or transfer the same to *to* anyone but myself. Please furnish a statement. Ben J. Richardson, Sheriff by A. E. Weed, Undersheriff Dated August 25, 1941." In response to the sheriff's courteous request for a statement, Bateman replied that he owed no money to Donovan, nor did he owe him any liability, contingent or otherwise, saving and except the judgment for $3,544. Then, following the instructions of the plaintiff, the sheriff proceeded to "sell" Donovan's debt-judgment against Bateman, the plaintiffs being the purchasers through a local agent. What magic words were used when the sale was made we do not know; the article offered for sale may have been called "debt," "claim," "judgment," or something else. No money was paid to the sheriff in support of the bid of $250 which he accepted, nor did the plaintiff's agent receive the $244.25 net returns from the sale for which he receipted. Just what notices of the sale were posted or published, the record does not disclose, but defendant Donovan had no actual notice of the sale, and knew nothing of it or of the garnishment until December 15, 1941. In their first letter of instructions to the sheriff the plaintiffs voiced a request that he mail a notice of the sale to defendant Donovan, but this was not done.

The defendant based his motion to vacate the sale upon several grounds. Those which we find to be without a sound foundation we shall refer to very briefly. Where the judgment creditor buys at an execution sale it is not essential to the validity of the sale that cash shall pass back and forth between the sheriff and the purchasing creditor. (*Mitchell* v. *Alpha Hardware & Supply Co.* (1935), 7 Cal.App.2d 52, 56-58 [45 P.2d 442].) The fact that the defendant had no knowledge that the levy had been made or that a sale was to take place does not of itself invalidate the sale (*Spellacy* v. *Young* (1919), 44 Cal.App. 174, 177 [186 P. 368], and see *Hamilton* v. *Carpenter* (1942), 52 Cal.App.2d 447, 448 [126

P.2d 395] and cases cited), especially where the defendant failed to avail himself of the protection now afforded by section 692a, Code of Civil Procedure. (*Mortimer* v. *Young* (1942), 53 Cal.App.2d 317, 319 [127 P.2d 950].) ▆ Holding the sale a thousand miles from the defendant's residence, without notice to him, might well have furnished a good reason for setting the sale aside, had the price received been grossly inadequate. (*Haish* v. *Hall* (1928), 90 Cal.App. 547, 550 [265 P. 1030]). The conclusion impliedly reached by the trial judge upon the hearing of the motion to dismiss, that the price received upon the "sale" of the judgment was not greatly disproportionate to its market value, cannot be said to be without warrant. It is true that Bateman was financially able to pay the judgment against him, but that did not give it a present worth anywhere near its face value. The trial court thought so little of it that he had granted a new trial on Bateman's motion. The order granting a new trial had been set aside, but an appeal had been taken and was pending when the plaintiffs made their bid. (The judgment was ultimately affirmed. See *Bateman* v. *Donovan* (1942), 131 F.2d 759.) Claims, apparently prior to plaintiffs' garnishment, reduced the value of the judgment still further. Under the circumstances, the discrepancy between the amount awarded by the judgment and the sum received on its sale does not signify that bad faith and oppression which warrants the vacating of an execution sale.

Inherent in the sale of a claim whose validity is not admitted is the likelihood that its owner will be deprived of it at a figure far below its actual worth. Perhaps that is the reason for the amendment made to section 688, Code of Civil Procedure, in 1941, consisting of the addition of the proviso at the end of this sentence: "Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in either real or personal property, and all other property not capable of manual delivery, may be levied upon or released from levy in like manner as like property may be attached or released from attachment; *provided, that no cause of action nor judgment as such, shall be subject to levy or sale on execution.*" (Italics ours.) ▆ It is argued that because of the prohibition of the proviso, the sale with which we are concerned was unauthorized. We are of the opinion that it

cannot be said that the sale was unauthorized because of the addition of the proviso to section 688, for two reasons. The first reason is that there was nothing in the act of the Legislature (Stats. 1941, p. 2858) indicating that it was the legislative intent to have the amendment affect existing creditors' rights, and so it is not to be given such a construction. (*Ware* v. *Heller* (1944), 63 Cal.App.2d 817 [148 P.2d 410], and cases cited, especially *Medical Finance Assn.* v. *Wood* (1936), 20 Cal.App.2dSupp. 749 [63 P.2d 1219].)

The second reason is that we are of the opinion that even before the amendment there was no authority for the sale, so that the lack of authority was not due to the amendment. We do not intend to support our conclusion, that the sale of the Donovan-Bateman judgment should have been set aside, because it was but a purported sale, unauthorized by law, by any extended argument. This is so because the argument we would make and the Supreme Court cases we would cite already appear in an opinion of the Appellate Department of the Los Angeles Superior Court reported in *Sunset Realty Co.* v. *Dadmun* (1939), 34 Cal.App.2d Supp. 733 [88 P.2d 947], and we see no useful purpose in republishing its contents.

The ultimate conclusion, in the case of *Sunset Realty Co.* v. *Dadmun,* was that the trial court had had no authority to hold a hearing on a third party claim. That to which a claim had been made was a debt which had been reduced to a judgment, not yet final, and the levy upon the debt-judgment had been by service of a garnishment upon the judgment debtor. The ultimate conclusion was rested heavily upon a prior one, which was (p. 737) "that the law, in harmony with reason, gives the levying officer neither the duty nor the power to sell a debt which has been garnisheed." The validity of the ultimate conclusion, we think it will be found, depends upon the validity of the one just quoted. The citation of the Sunset Realty Company case in support of the conclusion that in the case of a garnishment a third party claim hearing is not authorized is, therefore, to be regarded as an approval of the basis on which the conclusion rests. This is plainly so in the case of *Bank of America* v. *Riggs* (1940), 39 Cal. App.2d 679, 684 [104 P.2d 125], where we find this statement: "The right of a third party claimant to try the title to an indebtedness due by a garnishee to such third party claimant received the studied consideration of the appellate

department of the superior court in the case of *Sunset Realty Co.* v. *Dadmun,* 34 Cal.App.2dⅰSupp. 733 [88 P.2d 947]. Said opinion reviews the several code sections and the cases explanatory thereof. From a thorough review of the authorities, it is there made clear that *when a debt is garnished, the right to collect it is vested thereafter solely in the judgment creditor* (Sec. 544, CodeCiv.Proc.), and when collected it is credited directly on the judgment. Inasmuch as the sheriff did not gain possession of the moneys owing, they remained in the same custody where they rested prior to the levies. To remove them an entirely new action was requisite." The case from which the quotation, with its own emphasis, was taken in turn is cited as authority, in *Partch* v. *Adams* (1942), 55 Cal.App.2d 1, 9 [130 P.2d 244], for these two sentences: "As a matter of law, the judgment in the third party proceeding was void. Such a proceeding does not lie where . . . an indebtedness has been attached." A third opinion adds its approval to the basic conclusion of the Sunset Realty Company case, for in *Nanny* v. *H. E. Pogue Distillery Co.* (1943), 56 Cal.App.2d 817, 822 [133 P.2d 686], we find: "until Sawelson paid the purportedly garnished debt to the marshal, respondent was not in position to file a third party claim thereto. (*Sunset Realty Co.* v. *Dadmun* . . . .)"

There is a conflict between the conclusion reached in the Sunset Realty Company case and those cases which rely upon it, and the conclusion reached in the four cases to which we now turn our attention. How great the conflict is depends in part upon the strength of the distinction which is made between the two modes of serving a writ of execution to lay hold upon a debt. In the case under review, as in the Sunset Realty Company case, service was upon the debtor. In *Meserve* v. *Superior Court* (1934), 2 Cal.App.2d 468, 472 [38 P.2d 453], service had been made upon the plaintiff, the creditor, and it was held that the pending cause of action could be sold. This case was cited with approval in *Everts* v. *Will S. Fawcett Co.* (1937), 24 Cal.App.2d 213, 216 [74 P.2d 815], where four tort causes of action were levied upon and sold, and where emphasis was placed upon the fact that the levy had been made upon the plaintiffs, those who claimed that damages were due them, and not upon the claimed debtors, thus avoiding a conflict with *Arp* v. *Blake* (1923), 63 Cal.App. 362 [218 P. 773], where the debtor had been

served. The Meserve and Everts cases were not regarded by the court, in the Sunset Realty Company case, as controlling upon it, because in the former, service had been made upon the creditor, in the latter a true garnishment had taken place, that is, the debtor had been served. This same distinction is again recognized in *Mortimer* v. *Young, supra,* 53 Cal.App.2d 317, 320, 321 [127 P.2d 950], where a tort cause of action was held to have been validly sold, emphasis being placed upon the fact that the claim had not been garnished, but "the levy was made by notifying, not the supposed debtor, but the plaintiff herself."

The fourth case at odds with the conclusion reached in the Sunset Realty Company case is *Lantin* v. *Biscailuz* (1939), 35 Cal.App.2d 422, 427 [95 P.2d 962]. Indeed, this case agrees with none of those we have been considering. There, a debt reduced to a final judgment was the subject of garnishment, levy having been made upon the debtor. The court held, first of all, that the only valid manner of levying upon a debt is by service upon the debtor, not by service upon the creditor. Then it held that a garnishment upon a "debt" could be followed by a sale of the debt, the holding in the Sunset Realty Co. case being frowned upon, the Supreme Court cases relied upon in that case being distinguished upon the ground that they dealt with a sale of "judgments", not "debts." We note with interest that the court which decided the Lantin case also decided the case of *Nanny* v. *H. E. Pogue Distillery Co., supra,* 56 Cal.App.2d 817 [133 P.2d 686], with its citation of the Sunset Realty Company case.

Because we are of the opinion that the debt-judgment owed to defendant Donovan by Bateman could not be sold by the sheriff under the situation presented by this case, the order denying the motion to vacate the sale is reversed. ■ A second motion to vacate the sale, made after an appeal had been taken from the order just reversed, was also denied. Even if an appeal would lie from this second order of denial, which is doubtful, it has become moot by our reversal of the first order, so that it is dismissed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 10, 1944.