[Civ. No. 42926. Second Dist., Div. Four. Nov. 12, 1974.]

GERALDINE P. SMITH, Plaintiff and Respondent, v.
MAX D. KESSLER, Defendant and Appellant.

COUNSEL

Leerskov, Byard, Hunter, Kandel & Kazemzadeh, Andrew S. Leerskov, and Fields, Fehn & Feinstein for Defendant and Appellant.

Kessler & Drasin and Lawrence Drasin for Plaintiff and Respondent.

OPINION

FILES, P. J.—This is an action to recover a parcel of residential real property which defendant Max D. Kessler had acquired through an execution sale. The trial court ordered Kessler to convey the property to the plaintiff, Geraldine P. Smith. The judgment also provided that "4. It Is ALTERNATIVELY ORDERED . . . that plaintiff may redeem that real property" upon payment of $1,135 to Kessler. The case is here on Kessler's appeal.

*Historical facts*

In 1950 Mrs. Smith purchased the home in Lakewood which is the subject of this action. In May 1965 H. L. Stephan, a collection agent, doing business as "Downey Credit Service," brought an action against her in the municipal court and on June 15, 1965, obtained a default judgment in the amount of $1,400.56. The municipal court record contained no proof of service of process except a declaration of service which had been filled out but not signed.

Mrs. Smith, a widow, lived alone in her house until about June 1965 when she moved to Hawaii. She rented her Lakewood home to a couple, who paid her $165 per month rent from 1965 through October 1969. Except for occasional visits to California, Mrs. Smith lived continuously in Hawaii until March 31, 1970, after which she resumed residence in the Lakewood house.

During the period of 1965 to 1969 she made a number of payments to Stephan for which the latter filed acknowledgments of partial satisfaction of judgment.

Kessler is a real estate salesman and appraiser. In the course of his business, he sometimes buys property at foreclosure sales. In March 1969 he approached Stephan and purchased the judgment in his wife's maiden name for a price of $700. Kessler caused a writ of execution to be issued

for the amount of $916.95, and levied upon the real property. At a marshal's sale held July 14, 1969, Kessler bid in the property for a price of $990.55. The bid was made in the name of "M. Kaplan," which was the maiden name of Kessler's wife.

On July 21, 1970, a marshal's deed to "M. Kaplan" and a deed from "M. Kaplan" to Kessler were recorded.

On August 28, 1970, Mrs. Smith found tacked to the door of the Lakewood house a "3 day notice for possession." She immediately consulted an attorney. Shortly after that she was served with a summons and complaint in an unlawful detainer action brought by Kessler.

Mrs. Smith's attorney examined the municipal court record of the Stephan case and noted the absence of a signature on the declaration of service. He called this to the attention of the clerk, who informed one of the judges of that court. The judge sent a letter to the attorney for Mrs. Smith, and also to Stephan's attorney and Kessler's attorney, requesting them to come in for a hearing on October 23, 1970.

On that day Mrs. Smith's attorney, Stephan, and an attorney representing the Title Insurance and Trust Company came to the courtroom of the judge who had written the letter. Mrs. Smith and Stephan's process server were also present. The judge stated he would take testimony. Mrs. Smith's attorney objected to any taking of testimony on the ground that the judgment was void and testimony at that time would be irrelevant and immaterial. He stated that he would participate in the hearing, subject to his objection.

The judge swore the process server, who then testified from his records that he had served summons and complaint on Mrs. Smith when she had come into the Stephan office after Stephan had attached her bank account. The attorneys cross-examined.

Mrs. Smith then testified that she remembered having gone to the collection agency office, but denied that she had been served with process and denied that she had known of a court action against her until she received the eviction notice in August 1970.

Following this testimony there was a colloquy between counsel and the court about legal issues. The judge then put the matter over to November 6. On that date additional evidence was received and the matter was taken under submission. On November 16, 1970, the municipal court made a minute entry: "Motion to set aside default judgment is denied. Court finds that the Defendant was properly served with summons and

complaint and thus the Court had jurisdiction. Judgment for plaintiff is entered nunc pro tunc as of June 16, 1965."

*The superior court proceedings*

The instant case was tried before the superior court, sitting without a jury, upon stipulated facts and exhibits, plus the testimony of Mrs. Smith and Mr. Kessler. It was stipulated that at the time of the execution sale the Lakewood home was worth between $20,000 and $24,000, subject to a trust deed held by an insurance company on which about $4,000 was then owing. (The amount of the encumbrance was less at the time of trial because Mrs. Smith had kept up her regular payments on the trust deed note.) It was also stipulated that the marshal's sale had been conducted in conformity with the applicable statutes. At the time of the sale the law did not require any notice by mail to the judgment debtor. (The requirement for such a notice was added to Code Civ. Proc., § 692, subd. 3, by Stats. 1971, ch. 1312, p. 2612.)

The superior court made findings of fact which included the following, among other things:

At no time was Mrs. Smith ever served with summons and complaint in the Stephan action. She had no notice of that action until she was served with summons and complaint in the unlawful detainer proceeding in 1970. Shortly after that Mrs. Smith tendered to Kessler the sum of $1,135, which was the sum necessary to redeem the property if a right of redemption existed, but Kessler refused the tender. The court further found that, subsequent to the marshal's sale, Kessler made no effort to communicate with Mrs. Smith, nor did he make any payments on the encumbrance or any payment of taxes, permitting her to do both, because he did not wish her to learn of the sale and of her right of redemption.

The findings referred to above are supported by substantial evidence in the record of the superior court trial.

In deciding this appeal it is unnecessary for us to consider or decide whether the 1965 judgment was subject to validation in 1970 by belated proof of service, or whether the November 16, 1970, order made by the municipal court judge was effective for that purpose. Mrs. Smith has never questioned her duty to pay the debts which were the basis of the Stephan judgment. In the superior court she offered to do equity if the court would restore her property to her. She testified that she was then willing to pay

the $1,135 which she had tendered to Kessler as the balance due on the judgment.[1] We accept this as her position in this litigation.

■ Notwithstanding that Code of Civil Procedure section 702 provides that a judgment debtor may redeem the property· "any time within 12 months after the sale" the case law is well established that the statute is not a bar to later redemption where equitable considerations call for such relief. (*Winbigler* v. *Sherman* (1917) 175 Cal. 270 [165 P. 943]; *Odell* v. *Cox* (1907) 151 Cal. 70 [90 P. 194]; *Young* v. *Barker* (1948) 83 Cal.App.2d 654, 658-661 [189 P.2d 521]; *Haish* v. *Hall* (1928) 90 Cal. App. 547 [265 P. 1030]; *Hyman* v. *Stern* (1923) 61 Cal.App. 656 [215 P. 911]; see *Bunting* v. *Haskell* (1907) 152 Cal. 426, 430 [93 P. 110]; *Powers* v. *Powers* (1963) 221 Cal.App.2d 746, 748 [34 Cal.Rptr. 835].)

■ Kessler contends that the judgment cannot rest upon the ground of equitable redemption because it was not properly pleaded. The record shows there was at the beginning of the trial a certain amount of confusion about that.

The fifth count in the complaint contained all of the facts necessary to state a cause of action for equitable redemption. The prayer of the complaint asked equitable redemption, among other forms of relief. Kessler moved for judgment on the pleadings on the fifth cause of action because it did not contain sufficient factual allegations of fraud. The court granted the motion.

Plaintiff's attorney then asked the court to reconsider the fifth cause of action as a valid pleading of a claim for equitable redemption. He offered to amend by deleting some conclusionary allegations regarding fraud. The court responded "I will grant your motion to amend the Fifth Cause of Action so that it alleges a cause of action for equitable redemption against Mr. Kessler only."

The trial went forward. Plaintiff's attorney never filed any formal amendment; none was necessary. The amendment could have been accomplished by marking on the existing pleading the deletions which defendant had specified in his motion. Be that as it may, the case was tried upon the theory that plaintiff was seeking equitable redemption, and the defendant has no basis for now raising his objection to the lack of a formal amendment. (*Freeman* v. *Gray-Cowan, Inc.* (1933) 219· Cal. 85, 87 [25 P.2d 415].)

---

[1]Kessler has not·questioned the correctness of this amount.

We note in the record a paper denominated 'judgment," dated May 31, 1972, which purports to be a judgment on the pleadings in favor of Max D. Kessler (who, alone, is the appellant) and M. Kaplan as to the fifth and sixth causes of action. This, of course, is not a judgment as to Kessler, because it did not dispose of all of the issues in the case as between that defendant and the plaintiff. (*Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357].) As to Kessler, the only judgment in this case was the one entered January 4, 1973, based upon the court's findings at the trial, and from which this appeal was taken.

■ The evidence fully supports the decision to grant equitable relief to Mrs. Smith. The applicable law is set forth in *Winbigler* v. *Sherman* (1917) 175 Cal. 270 at pages 275-276 [165 P. 943]: "Although another rule prevails in some jurisdictions, it is the settled rule in this state that mere inadequacy of price is not a sufficient ground for refusing to give full effect to such a sale as this. This rule was recognized, and many authorities cited, in *Odell* v. *Cox*, 151 Cal. 70, 73 [90 Pac. 194], where an execution sale was involved. In that case, however, a judgment vacating an execution sale was affirmed on the theory that there were circumstances which, considered in connection with the grossly inadequate price paid, were sufficient to support the conclusion of the trial court that there was such unfairness and undue advantage resulting in gross inadequacy of price as warranted the vacating of the sale. . . . This court said: 'We think there can be no doubt under the authorities that where, in addition to gross inadequacy of price, the purchaser has, in the language of the United States supreme court, "been guilty of any unfairness or has taken any undue advantage" resulting in such gross inadequacy and consequent injury to the owner of the property, he will be deemed guilty of fraud warranting the interposition of a court of equity in favor of the owner who is himself without fault.' "

Here we have a grossly inadequate price and manifest unfairness. Kessler bid-in the property under a name that would not readily be connected to him and quietly waited for the expiration of the statutory period for redemption, allowing Mrs. Smith to collect the rents (see Code Civ. Proc., § 707), pay the taxes and build up her equity by payments on the trust deed during that period. Mrs. Smith was in total ignorance of what was happening, as Kessler surely realized. He is not chargeable for his intent, but for what he did, that is, to take advantage of an absent and unwary owner.

The facts of the instant case are aptly characterized by the first sentence of Justice Wilson's opinion in *Young* v. *Barker, supra*, 83 Cal.App.2d

at page 655: "As the facts in this case unfold there will appear a program, well prepared and almost successful, whereby plaintiff hoped to acquire a valuable property for a paltry sum by following the forms of law but in defiance of the elemental rules of equity and without a simulacrum of justice."

We do not overlook Kessler's contention that the superior court should have followed the finding made by the municipal court in November 1970, that Mrs. Smith had been served with summons and complaint in the Stephan suit. The superior court believed Mrs. Smith's testimony that she had not been served and that she did not know she had been sued by Stephan. Whether or not she was served is not decisive. If there was service, the papers were handed to her while she was in the collection agency office to see about having her bank account released. She testified she knew Stephan had caused the bank to withhold her money, but she did not understand that this meant an action had been filed. For a time she made monthly payments to the judgment creditor, who never levied on the property, which was in her name, or garnished or sequestered the rent payments which were sent regularly to her over a period of five years. The tenants did not inform her of any notice of levy. Upon this record the trial court was justified in concluding that Kessler took unfair advantage of an absent and unwary owner to acquire valuable property for a fraction of its value.

It is necessary to modify the judgment to eliminate its internal inconsistency and provide the machinery for the equitable redemption. The superior court granted a preliminary injunction halting proceedings in the unlawful detainer case, and we assume the status quo has been maintained.

The judgment of the superior court entered January 4, 1973, is modified as follows:

Numbered paragraphs 1 and 2 are stricken.

Numbered paragraph 3 is modified by inserting at the beginning the words "Subject to the provisions of numbered paragraph 4."

Numbered paragraph 4 is modified by striking the word "ALTERNATIVELY" in the first line, and by adding the following language at the end of the paragraph: "The tender shall be made within 60 days after the filing of the appellate court's remittitur in the superior court, or within such other time as the superior court may determine. The superior court retains jurisdiction to do all things necessary and proper to accomplish the redemption and restoration of title from defendant Max Kessler to

plaintiff, and to set or extend the times of performance by each of the parties as justice and equity may require. In the event plaintiff fails to make a proper tender within the time specified above, or such other time as the court may set, the court will make a further order declaring plaintiff's right to redeem terminated and dissolving the injunction against defendant Max Kessler."

As so modified, the judgment is affirmed. Respondent shall recover costs on appeal.

Kingsley, J., and Dunn, J., concurred.