In re Paul W. JORDAN, Debtor.

Paul W. JORDAN and Herbert Wolas, Trustee, Plaintiffs,

v.

Richard R. HOPKINS, Defendant.

Bankruptcy No. LA 80–04329–JD.
Adv. No. 80–1225–JD.

United States Bankruptcy Court,
C. D. California.

Aug. 25, 1981.
As Corrected Oct. 27, 1981.

Robert M. Yaspan, and Michael Goch, Sherman Oaks, Cal., for plaintiff.

Rick Schwartz, Los Angeles, Cal., Francis A. Sparagna, Jr., Northridge, Cal., for defendant.

## MEMORANDUM OF DECISION

JAMES R. DOOLEY, Bankruptcy Judge.

In this case the court is called upon to resolve a dispute as to the title to certain real property located at 15456 and 15460 Ventura Blvd., Sherman Oaks, California (hereinafter the "property"). The plaintiff, Paul Jordan ("Jordan"), acquired title to the property during 1969 and 1970, and, except for the effect of certain execution sales of the property during 1978 and redemptions from these sales during 1978 and 1979, would have remained the owner of the property. The defendant, Richard R. Hopkins ("Hopkins"), claims title to the property by virtue of his having redeemed the property from an execution sale held on May 24, 1978 to satisfy a judgment of San Lorenzo Nursery. Two principal questions are presented to the court for decision:

1. Does Hopkins hold title to the property as a matter of law?

2. If Hopkins holds title to the property as a matter of law, is Jordan entitled to redeem the property under the principles of equitable redemption?

For the reasons which follow, the court answers both of the foregoing questions in the affirmative.

### FACTS

Jordan acquired title to the property during 1969 and 1970.[1] The property is subject to deeds of trust in favor of the American City Bank and other secured creditors, which deeds of trust were recorded prior to 1976.[2] Also, on September 20, 1976, Jordan

---

1. The property is legally described as Lots 28 and 29 of Tract 10,000. Jordan acquired title to Lot 28 by Grant Deed acknowledged December 18, 1969 and recorded on December 31, 1969; and Jordan acquired title to Lot 29 by Grant Deed acknowledged on April 8, 1970 and recorded on July 31, 1970. In 1976 Jordan executed a covenant and agreement with the City of Los Angeles to hold Lots 28 and 29 as one parcel.

2. On November 17, 1980, American City Bank commenced an adversary proceeding in this court, No. 80–3524, seeking termination or

leased the property to Tiffany's Astrological Club of Encino, Inc. ("Tiffany's")[3]; and on January 21, 1977, Jordan executed an assignment of rents relating to the property to American City Bank. However, in the view of this court, the substantive rights and liabilities of Tiffany's and of those secured creditors whose deeds of trust were recorded prior to 1976 are not affected by the present controversy.

The chronology of the pertinent judgment liens, execution sales, redemptions, and other events is as follows:[4]

| Date | Comment |
| --- | --- |
| June 10, 1977 | James and Virginia Boyle ("Boyles") recorded an Abstract of Judgment against Jordan in Los Angeles County[5] for a total of $6,859.54. |
| October 7, 1977 | San Lorenzo Nursery Company ("SLN") recorded an Abstract of Judgment against Jordan for a total of $2,140.00. |
| December 20, 1977 | M. Varela ("Varela") recorded an Abstract of Judgment against Jordan for a total of $3,594.46. |
| March 13, 1978 | Jack Krivitsky ("Krivitsky") recorded an Abstract of Judgment against Jordan for a total of $3,551.98. |
| May 24, 1978 | Execution sale held pursuant to levy of Writ of Execution to satisfy SLN judgment. Property sold to SLN for $100.00. |
| July 19, 1978 | Execution sale held pursuant to levy of Writ of Execution to satisfy the Boyles' judgment. Property sold to the Boyles for $6,982.25. |
| August 15, 1978 | Execution sale held pursuant to levy of Writ of Execution to satisfy the Krivitsky judgment. Property sold to Krivitsky for $3,711.00. |
| August 21, 1978 | Varela redeemed from the SLN execution sale by tendering the statutory amount (an amount less than $110.00) to the Sheriff's Office. Neither Varela nor the sheriff recorded a Certificate of Redemption as required by C.C.P. § 703. |
| May 7, 1979 | Krivitsky assigned his judgment to Hopkins; and Krivitsky and his wife also quitclaimed the property to Hopkins. |
| May 14, 1979 | Hopkins redeemed from the SLN execution sale by paying $109.14, and this sum was accepted by the sheriff and by Varela. |
| May 14, 1979 | Hopkins recorded a Notice of Redemption. |
| May 21, 1979 | Hopkins recorded another Notice of Redemption. |
| May 31, 1979 | Hopkins filed a petition for a Writ of Mandate in the Superior Court to compel the sheriff to issue to him a Sheriff's Deed covering the property, case No. C286229. |
| May 31, 1979 | Sheriff's Certificate of Redemption was issued, certifying that Hopkins had redeemed from the SLN execution sale. This certificate was recorded on January 4, 1980. |
| June 6, 1979 | Judgment was entered by the Superior Court in case No. C286229 compelling the sheriff to issue a Sheriff's Deed to Hopkins. |
| June 7, 1979 | Sheriff's Deed issued to Hopkins based on the SLN execution sale. |
| July 18, 1979 | Jordan redeemed from the Boyles' execution sale by paying $7,540.81. |
| August 8, 1979 | Sheriff's Certificate of Redemption was issued, certifying that Jordan had redeemed from the Boyles' execution sale. This cer- |

modification of the automatic stay. The trial of the latter proceeding has been held in abeyance pending resolution of the title question.

**3.** On July 23, 1980, Paul W. Jordan and Richard R. Hopkins joined as plaintiffs in a Complaint For Unlawful Detainer filed in this court against Tiffany's. That adversary proceeding, No. 80–1632, resulted in a default judgment against Tiffany's on September 10, 1980, which provided, *inter alia*, that the defendant "shall vacate said premises", that the "lease shall be forfeited", and that plaintiffs "shall have judgment jointly against defendant...". The total monetary judgment was for $40,010.57, plus interest, and accruing rent at $167.67 per day from and after April 1, 1980, plus costs.

**4.** This chronology omits an execution sale held on April 19, 1977 pursuant to levy of writ of execution to satisfy a judgment of the Collection Control Bureau which was recorded on December 9, 1976. Since Jordan redeemed from this execution sale on April 14, 1978, it cannot affect the resolution of the present dispute.

**5.** All of the judgments referred to hereinafter as recorded were recorded in Los Angeles County.

| Date | Comment |
|---|---|
| | tificate was recorded on August 20, 1979. |
| August 14, 1979 | Jordan tendered $3,954.00 to the levying officer to redeem from the Krivitsky execution sale and said funds were later remitted to Hopkins by the levying officer. The monies paid by Jordan to redeem from the Krivitsky sale were accepted by Hopkins; half went to Krivitsky and half was retained by Hopkins to pay his attorney's fees. |
| August 15, 1979 | Robert M. Yaspan, Esq. delivered to the office of Hopkins, on behalf of Jordan, a letter enclosing a Robert M. Yaspan client trust check in the amount of $150.00 in an attempt to redeem the property from the SLN execution sale. On August 16, 1979 Hopkins rejected said $150.00 tender. |
| August 1979 | Jordan filed in the Superior Court in case No. C286229 a Motion To Set Aside Alternative Writ of Mandate and a Motion For Intervention By Real Party In Interest. |
| September 13, 1979 | Superior Court denied Jordan's motions in case No. C286229. |
| May 11, 1980 | Jordan filed in this court a petition under Chapter 11 of the Bankruptcy Code. On December 17, 1980 the proceeding under Chapter 11 was converted to one under Chapter 7. |
| June 13, 1980 | Jordan commenced the present adversary proceeding. |
| October 24, 1980 | The Boyles issued a quitclaim deed to Jordan. |

Hopkins was admitted to the California Bar in 1975 and has been a practicing attorney in this state since that time. Hopkins represented Krivitsky and his wife from the time that he opened his law office in April 1976 until about October 1979. Hopkins was Krivitsky's only attorney on May 7, 1979 when the Krivitsky judgment was assigned to Hopkins. Hopkins did not pay any money to Krivitsky for the assignment of judgment executed and dated on May 7, 1979; however, Hopkins did agree to pay and later did pay 50% of any recovery from Jordan as consideration for the assignment of the Krivitsky judgment.

An appraiser testifying on behalf of Jordan estimated that the property had a market value of $610,000.00 ($530,000.00 plus $80,000.00) [6] as of May 24, 1978, $644,000.00 as of May 24, 1979, and $750,000.00 as of July 1980. An appraiser testifying on behalf of Hopkins estimated that the property had a market value of $450,000.00 as of May 1978. The court concludes from the evidence that the property had a market value of at least $500,000.00 during May 1978, at least $570,000.00 during May 1979 and at least $650,000.00 during July, 1980.[7]

The parties stipulated in the pre-trial conference order that liens and encumbrances against the property totaled at least $362,000.00 on May 24, 1978 and at least $380,000.00 on May 24, 1979. The court concludes that there was equity in the property over and above all liens and encumbrances of at least $100,000.00 during May, 1978 and at least $140,000.00 during May, 1979.

### HOPKINS HOLDS TITLE TO THE PROPERTY AS A MATTER OF LAW

Jordan contends that the SLN execution sale is voidable by him because the public notice of sale did not give the street address of the property as required by Section 692 of the California Code of Civil Procedure. However, Section 692 of the California Code of Civil Procedure specifically provides as follows:

"... If a legal description of the property is given, the validity of the notice and the validity of the sale shall not be affected by the fact that the street address, other common designation, name and address of the beneficiary, or the directions

---

6. This appraiser added $80,000.00 to the appraised market value because rental payments under the lease were higher than those generally prevailing on May 24, 1978.

7. The court's conclusion as to market value is not based upon any increased value because of the lease nor upon the value of the equipment on the premises. The appraiser testifying on behalf of Jordan estimated that the equipment had a value of $30,000.00 as of July 1980.

obtained therefrom are erroneous or that the street address, other common designation, name and address of the beneficiary or directions obtained therefrom are omitted...".

█ The sheriff's notice of the SLN execution sale contained a legal description of the property; therefore, under the above-quoted statutory provision, the validity of the SLN execution sale is not affected by the fact that the street address was omitted from the notice. Moreover, even where the notice is improper, the judgment debtor's sole remedy is under Section 693 of the California Code of Civil Procedure.[8] Cf. *Young v. Hessler*, 72 Cal.App.2d 67, 71, 164 P.2d 65; *Hamilton v. Carpenter*, 52 Cal. App.2d 447, 448, 126 P.2d 395 (1942); 30 Cal.Jur.3d Enforcement of Judgments § 140.

█ Jordan also contends that the SLN execution sale is voidable because he did not receive actual notice of the sale. However, it has been held that an execution sale is not invalidated by the fact that the judgment debtor had no knowledge that a levy had been made or that a sale was about to take place, especially where he did not request notice of sale, as provided for in Section 692a of the California Code of Civil Procedure. *Mortimer v. Young*, 53 Cal. App.2d 317, 319, 127 P.2d 950 (1942); see also *Turner v. Donovan*, 64 Cal.App.2d 375, 377–378, 148 P.2d 912 (1944).

█ Moreover, the validity of the SLN execution sale was in effect sustained by the Superior Court when it entered its judgment in case No. C286229 on June 6, 1979 compelling the sheriff to issue a Sheriff's Deed to Hopkins and when it issued its order on September 13, 1979 denying Jordan's Motion To Set Aside Alternative Writ Of Mandate and Jordan's Motion For Intervention By Real Party In Interest. This court is required to give full faith and credit to the final judgments and orders of the Superior Court. 28 U.S.C. § 1738; *Huron Corp. v. Lincoln Co.*, 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941); *Davis v. Davis*, 305 U.S. 32, 39–40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938); *Government Personnel Mutual Life Insurance Company v. Kaye*, 584 F.2d 738 (5th Cir. 1978); Note, 54 Harv.L.Review 1076.

█ This court concludes that Hopkins acquired title to the property by virtue of the SLN execution sale. The crucial question remains, however, as to whether Hopkins lost his title to the property by reason of his failure to redeem from the Boyles' and Krivitsky execution sales and by reason of Jordan's redemptions from these sales. This question was not determined by the Superior Court, and there is a dearth of controlling authority to resolve it. However, the facts in *Bateman v. Kellogg*, 59 Cal.App. 464, 211 P. 46 (1922) are similar to the facts in the present case; and based upon the *Bateman* case and other authorities this court concludes as follows:

1. When Hopkins redeemed from the SLN execution sale and Jordan failed to redeem from that sale within the 12-month redemption period, Hopkins acquired all of the right, title, interest, and claim of Jordan to the property as of October 7, 1977, the date that the SLN judgment was recorded. Section 700 of the California Code of Civil Procedure; *Noble v. Beach*, 21 Cal.2d 91, 94, 130 P.2d 426 (1942); *Bateman v. Kellogg*, *supra*, 59 Cal.App. at page 472, 211 P. 46.

2. Jordan, a judgment debtor, had the right to redeem from the Boyles' and Krivitsky execution sales, even though Hopkins had succeeded to all of his title to the property. Cf. *Bateman v. Kellogg*, *supra*, 59 Cal.App. at page 479, 211 P. 46; "The Statutory Right Of Redemption In California", 52 California Law Review 846, 855.

---

8. Section 693 of the California Code of Civil Procedure provides as follows:

"§ 693. Sale without notice; forfeiture and damages; taking down or defacing notice, forfeiture

An officer selling without the notice prescribed by the last section forfeits one hundred dollars ($100) to the aggrieved party, in addition to his actual damages; and a person wilfully taking down or defacing the notice posted, if done before the sale or the satisfaction of judgment (if the judgment be satisfied before sale), forfeits five hundred dollars ($500)."

3. The redemption by Jordan, a judgment debtor, from the Boyles' execution sale served to wipe out the effect of the Boyles' sale. *Call v. Thunderbird Mortgage Co.*, 58 Cal.2d 542, 548, 25 Cal.Rptr. 265, 375 P.2d 169 (1962); *Kaiser v. Mansfield*, 160 Cal.App.2d 620, 628, 325 P.2d 865 (1958). Similarly, the redemption by Jordan from the Krivitsky execution sale served to wipe out the effect of the Krivitsky sale.

4. The redemption by Jordan from both the Boyles' sale and the Krivitsky sale served to wipe out the effect of both of these sales and thereby revested Hopkins with the legal title that he had acquired from the SLN execution sale. *Bateman v. Kellogg, supra*, 59 Cal.App. at pages 480–481, 211 P. 46.

### JORDAN IS ENTITLED TO REDEEM THE PROPERTY UNDER PRINCIPLES OF EQUITABLE REDEMPTION

■ It is well settled that redemption after expiration of the 12-month period may be allowed where equitable considerations justify such relief. *Webb v. Vercoe*, 201 Cal. 754, 258 P. 1099 (1927); *Smith v. Kessler*, 43 Cal.App.3d 26, 31, 117 Cal.Rptr. 470 (1974); *Young v. Barker*, 83 Cal.App.2d 654, 658–661, 189 P.2d 521 (1948); see also, *Bunting v. Haskell*, 152 Cal. 426, 430, 93 P. 110 (1907); *Omnibus Inv. Corp. v. Maag*, 188 Cal.App.2d 29, 31, 10 Cal.Rptr. 178 (1961). As the court in *Smith v. Kessler, supra*, declared (43 Cal.App.3d p. 31, 117 Cal.Rptr. 470).

"Notwithstanding that Code of Civil Procedure section 702 provides that a judgment debtor may redeem the property 'any time within 12 months after the sale' the case law is well established that the statute is not a bar to later redemption where equitable considerations call for such relief...".

■ In this case the court concludes that equitable redemption should be allowed for at least three reasons:

1. The consideration paid by Hopkins to redeem from the SLN execution sale, $109.14, is grossly inadequate in light of the value of the property.

2. The public notice of the SLN execution sale did not meet statutory requirements; and Jordan did not have actual knowledge of the SLN execution sale.

3. The evidence indicates that Hopkins, an attorney, had designs on Jordan's property long before he redeemed from the SLN execution sale and even before ₁the SLN execution sale was held.

The only amount paid by Hopkins for the property was the $109.14 which he paid to redeem from the SLN execution sale. Yet, the court finds that the property had a value of at least $500,000.00 on May 24, 1978, at least $570,000.00 during May, 1979, and at least $650,000.00 during July, 1980. The court also finds that there was equity in the property over and above all liens and encumbrances of at least $100,000.00 during May, 1978 and at least $140,000.00 during May, 1979. Clearly, the consideration paid by Hopkins for the property was so grossly inadequate as to shock the conscience.

Where there is gross inadequacy of consideration the courts are prone to grant relief. *Ballentyne v. Smith*, 205 U.S. 285, 27 S.Ct. 527, 51 L.Ed. 803 (1907); *Winbigler v. Sherman*, 175 Cal. 270, 275–276, 165 P. 943 (1917); *Odell v. Cox*, 151 Cal. 70, 73–77, 90 P. 194 (1907); *Smith v. Kessler, supra*, 43 Cal.App.3d at pages 32–33, 117 Cal.Rptr. 470. In *Young v. Barker, supra*, the court said (83 Cal.App.2d pp. 659–660, 189 P.2d 521):

"... In *Graffam v. Burgess*, 117 U.S. 180, 192, 6 S.Ct. 686, 692, 29 L.Ed. 839, 843, it is said that if the inadequacy is so gross as to shock the conscience (it is so in the instant case), or if, in addition to the gross inadequacy, the purchaser has been unfair or has taken undue advantage, or if the owner of the property has been misled or surprised, the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property from the sale. 'Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.' ..."

As discussed above, the fact that the public notice of the SLN execution sale did not give the street or common address of the property as required by Section 692 of the California Code of Civil Procedure, and the fact that Jordan did not receive actual notice of the SLN execution sale may not be considered in determining who has title to the property as a matter of law. However, these facts may be considered in determining whether equitable redemption should be allowed. Cf. *Smith v. Kessler, supra,* 43 Cal.App.3d at page 32, 117 Cal.Rptr. 470; *Young v. Barker, supra,* 83 Cal.App.2d at page 659, 189 P.2d 521; *Odell v. Cox, supra,* 151 Cal. at pages 75–76, 90 P. 194.

The court finds that Jordan did not have actual knowledge of the SLN execution sale until after the 12-month redemption period had expired.[9] The Notice of Sale required by Section 692 of the California Code of Civil Procedure was mailed to Jordan in care of his attorney of record in the SLN litigation. However, the Notice of Sale was returned to the Sheriff's Office unopened and marked "unclaimed" on April 14, 1978. The Notice of Eligibility to Redeem required by Section 700a(b) of the California Code of Civil Procedure was also mailed to Jordan in care of his attorney of record in the SLN litigation. The latter notice was signed for at said attorney's office on June 5, 1978, however, it never reached Jordan.

In *Young v. Barker, supra,* the court said (83 Cal.App.2d page 655, 189 P.2d 521): "... As the facts in this case unfold there will appear a program, well prepared and almost successful, whereby plaintiff hoped to acquire a valuable property for a paltry sum by following the forms of law but in defiance of the elemental rules of equity and without a simulacrum of justice."

While the facts of this case are different from those in *Barker,* this court finds and concludes that Hopkins had determined long before his redemption from the SLN execution sale to acquire title to Jordan's property if it was possible for him to do so. This is indicated by the fact that he caused an investigation to be made of the financial status of Jordan, and the report of this investigation is dated April 17, 1978; that on August 25, 1978 Hopkins communicated with the Collection Control Bureau concerning a possible assignment of its judgment[10]; that by letter dated March 7, 1979 Hopkins communicated with counsel for the Boyles concerning purchasing the Boyles' right of redemption; that on May 7, 1979 Hopkins obtained an assignment of the Krivitsky judgment from his own client in order to redeem from the SLN execution sale[11]; and that prior to November 14, 1978 Hopkins had communicated with representatives of Tiffany's to determine how much Tiffany's would be willing to pay for the property.

The designs of Hopkins on the property may be gleaned from his letter dated November 14, 1978 to Mr. & Mrs. Jack Krivitsky which reads in part as follows (Defendant's Exhibit E):

"In reviewing the information available from the title report, and information obtained from American City Bank regarding their payments on some of the items covered by the preliminary report, which date later than the report, it appears that the property has encumberances on it totalling approximately $277,-350.00. Some of this, I suspect, could be reduced slightly by negotiations.

In speaking with the attorney for the Tiffany's Club, he indicated to me their

---

9. The court accepts Jordan's testimony that he did not learn of the SLN execution sale until about July 18, 1979 when he was at the Sheriff's Office redeeming from the Boyles' execution sale. Since Jordan has redeemed from all other execution sales, it is reasonable to assume that he would have redeemed from the SLN execution sale if he had known about it, particularly since he could have redeemed for less than $110.00.

10. At the time of this communication, however, Jordan had already redeemed from the execution sale of the Collection Control Bureau; although Jordan's Certificate of Redemption from that sale was not recorded until October 26, 1979.

11. This court does not determine whether Hopkins' conduct constituted a violation of Rule 5–103 of the Rules of Professional Conduct of the State of California.

desire to purchase the property and their willingness to pay just under $500,000.00 for the property.

On the basis of the foregoing, I feel it would be strongly advisable for you to take whatever action may be necessary to protect your interest in the property, and hopefully to obtain title to it in due time."

### OTHER ISSUES

Since this court has determined that plaintiffs are entitled to redeem the property under the principles of equitable redemption, the following issues raised by the parties will not be determined at this time:

1. Whether Jordan's trustee in bankruptcy is entitled to avoid any transfers to Hopkins pursuant to 11 U.S.C. § 548(a)(2)?

2. Whether Jordan's trustee in bankruptcy is entitled to avoid any transfers to Hopkins pursuant to Section 3439.01 et seq. of the California Civil Code?

3. Whether Sections 701 and 703 of the California Code of Civil Procedure are unconstitutional as denying Jordan equal protection of the laws in violation of the 14th Amendment to the United States Constitution?

4. Whether Sections 701 and 703 of the California Code of Civil Procedure are unconstitutional as violating Article 1, Section 7 of the California Constitution?

5. Whether a resulting trust should be enforced against Hopkins in favor of Jordan?

### CONCLUSION

Judgment should be entered in favor of the plaintiffs and against the defendant, decreeing that the plaintiffs are entitled to redeem the property under principles of equitable redemption. This Memorandum of Decision contains findings of fact and conclusions of law as required by Bankruptcy Rule 752(a). Plaintiffs' counsel should prepare, serve, and lodge an appropriate judgment.